UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11409

|  |  |
|---|---|
| DESIREE PEARCE | ) |
| Plaintiff, | ) MAGISTRATE JUDGE _____ |
| and | ) Civil Action No.: _____ |
| THE DUCHESNEAU GROUP, INC., | ) |
| DAVID MICHAEL DUCHESNEAU, | ) |
| And BRANT P. MCGETTRICK | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

Defendants, The Duchesneau Group, Inc. ("The Duchesneau Group"), David Michael Duchesneau ("Duchesneau"), and Brant P. McGettrick ("McGettrick") (collectively referred to hereinafter as "Defendants"), hereby file this Notice of Removal of the civil action entitled <u>Desiree Pearce v. The Duchesneau Group, Inc., David Michael Duchesneau, and Brant P. McGettrick</u>, Commonwealth of Massachusetts, Middlesex Superior Court, Civil Action No. 04-943, from the Superior Court Department of the Trial Court, Middlesex County, Commonwealth of Massachusetts (the "Action"), to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §§ 1441 and 1446. Removal of this Action is proper under 28 U.S.C. §1441 because this Court has original jurisdiction of the Action pursuant to 28 U.S.C. § 1332(a)(1).

There is, and was at all relevant times, complete diversity of citizenship between the parties because Plaintiff is and was a citizen of the State of Florida, and the Defendants are and were citizens of the Commonwealth of Massachusetts. The Complaint alleges that Plaintiff, Desiree Pearce ("Pearce") is an individual residing in Boca Raton, Palm Beach County, Florida.

Complaint, ¶1. The Complaint alleges that Defendant, The Duchesneau Group is a corporation with a principal place of business at 13 Riverside Drive, Weston, Massachusetts. Complaint ¶2. The Complaint alleges that Defendant, David Michael Duchesneau was a principal and the president of The Duchesneau Group and worked out of the Company's Weston, Massachusetts office. Complaint ¶3. The Complaint alleges that Defendant, Brant P. McGettrick was an unregistered investment advisor who was employed by the Duchesneau Group in its Weston, Massachusetts office. Complaint ¶4. Defendants are informed and believe that the amount in controversy in this Action exceeds the sum of $75,000.00, exclusive of interest and costs. *See,* Affidavit of Derek C. Anderson, attached hereto and incorporated herein.

Defendants shall file a certified copy of this Petition for Removal and attachments with the Clerk of the Superior Court Department of the Trial Court, Middlesex County, Massachusetts, and will serve a copy upon counsel of record for Plaintiff.

Respectfully submitted,

THE DUCHESNEAU GROUP, INC.,
DAVID MICHAEL DUCHESNEAU, and
BRANT P. MCGETTRICK,
By their attorneys,

Pete S. Michaels, Esq.
Derek C. Anderson, Esq.
Jason C. Moreau, Esq.
Murphy & Michaels, LLP
One Liberty Square
Boston, MA 02109
(617) 350-7700

Dated: June 21, 2004

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2004, a true and correct copy of the foregoing Notice of Removal was delivered by hand to the following counsel of record for Plaintiff: Matthew J. Tuttle, Esq., Perkins, Smith & Cohen, LLP, One Beacon Street, 30th Floor, Boston, MA 02108.

Derek C. Anderson

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.
SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

04- 943

04 11409 NG

DESIREE PEARCE,

    Plaintiff,

v.

THE DUCHESNEAU GROUP, INC.,
DAVID MICHAEL DUCHESNEAU, and
BRANT P. MCGETTRICK,

    Defendants.

CIVIL ACTION NO.

FILED IN THE OFFICE OF THE CLERK OF THE COURTS MIDDLESEX MAR 10 2004

## COMPLAINT

In this action, Plaintiff Desiree Pearce seeks to recover for the defendants' wrongful and fraudulent conduct in connection with the mishandling of her retirement funds by Defendants The Duchesneau Group, Inc., David Michael Duchesneau, and Brant P. McGettrick.

### I.   THE PARTIES

1. Plaintiff Desiree Pearce is an individual residing in Boca Raton, Palm Beach County, Florida.

2. Defendant The Duchesneau Group, Inc. (the "Company") is a corporation with a principal place of business at 13 Riverside Drive, Weston, Massachusetts.

3. At all relevant times, Defendant David Michael Duchesneau ("Duchesneau") was a principal and the president of The Duchesneau Group, Inc. and worked out of the Company's Weston, Massachusetts office.

4. At all relevant times, Defendant Brant P. McGettrick ("McGettrick") was an unregistered investment advisor who was employed by the Company in its Weston, Massachusetts office.

## II. THE FACTS

5. In or about February 2000, Ms. Pearce was referred to the Company to explore the possibility of retaining the Company and its employees as investment advisors to professionally manage Ms. Pearce's qualified retirement funds.

6. Ms. Pearce's first contact with the Company was through McGettrick. McGettrick held himself out to Ms. Pearce as a knowledgeable and experienced investment advisor who could provide professional expertise and recommendations to her with respect to investing her retirement funds.

7. Ms. Pearce informed McGettrick that she had very limited investment experience and wanted to invest her retirement funds in a conservative manner that would preserve them for her retirement. Ms. Pearce also told McGettrick that she had no pension or retirement plan available through her work and that the SEP IRA funds she intended to transfer to the defendants were her only savings for retirement.

8. Ms. Pearce informed McGettrick that she was in her early fifties and was looking to retire in the relatively short term and certainly within five to ten years.

9. Ms. Pearce further told McGettrick that, because of her busy work schedule and lack of investment experience, she needed a professional to monitor her retirement assets on a regular basis and recommend suitable investments for her.

10. McGettrick assured Ms. Pearce that he and the Company would regularly monitor her accounts and choose investments for her in accordance with her conservative objectives. McGettrick actively encouraged Ms. Pearce to transfer her retirement funds to his and the Company's control and touted the successes they had achieved for other clients.

11. After the first conversation between Ms. Pearce and McGettrick, McGettrick contacted Ms. Pearce with his recommendations for investments for her retirement funds. McGettrick recommended that she split her SEP IRA funds between two managed accounts: Insight Capital Management's ("Insight Capital") Non-Diversified Aggressive Growth Portfolio and TCW Asset Management's ("TCW") Small Cap Growth Fund.

2

12. McGettrick represented to Ms. Pearce that the managed funds were consistent with her conservative investment objectives and further assured Ms. Pearce that he would carefully monitor the performance of these investments to ensure against losses.

13. In reliance on McGettrick's representations that he and the Company would recommend appropriate investments and monitor Ms. Pearce's accounts at all times, Ms. Pearce transferred her SEP IRA funds to the defendants with a balance of $321,580.77.

14. The defendants failed, however, to properly explain to Ms. Pearce that, because the Company was not a licensed broker/dealer and McGettrick was not a registered representative, they were not able to directly purchase or sell securities on Ms. Pearce's behalf.

15. Instead of explaining this important detail to Ms. Pearce, McGettrick simply forwarded to Ms. Pearce for her signature a number of forms and contracts that would open a Salomon Smith Barney ("SSB") brokerage account through which the actual investments would be placed.

16. Moreover, the defendants did not tell Ms. Pearce that the Insight Capital and TCW funds had wrap fees that included management fees and transaction costs, which would be charged to Ms. Pearce's accounts.

17. The defendants further failed to the inform Ms. Pearce that she would have to pay commissions and fees to Insight Capital and TCW in addition to the fees and commissions she would have to pay to SSB and to McGettrick and the Company.

18. The defendants also failed to inform Ms. Pearce that they would not actually be the ones selecting the investments for her accounts. Once the two funds were purchased for Ms. Pearce, the independent managers of those funds made all decisions relating to the funds' holdings without input from the defendants or Ms. Pearce, and without any consideration of Ms. Pearce's investment objectives or tolerance for risk.

19. Not only were the intricacies of the relationships between the Company, SSB and the third-party investment managers never explained to her, but the investments recommended for Ms. Pearce by McGettrick and the Company were not suitable for her. Contrary to Ms. Pearce's

objectives and needs, both the TCW and the Insight Capital funds were risky and volatile by nature and were comprised mostly of stocks in technology companies and companies with small capitalization levels. These were not suitable investments for someone with Ms. Pearce's conservative investment objectives and relatively low tolerance for risk who was seeking to invest qualified retirement funds.

20.    The substantial level of risk and potential for loss inherent in each of the two funds were never discussed with Ms. Pearce by the defendants, despite the fact that they knew or should have known how risky and potentially volatile these funds were.

21.    These volatile and concentrated investments exposed Ms. Pearce to unnecessarily high levels of risk, significantly higher than she informed McGettrick she was willing to accept. McGettrick and the Company never made any attempt to diversify Ms. Pearce's holdings or protect the accounts against losses.

22.    Moreover, McGettrick failed to monitor Ms. Pearce's accounts as he had explicitly assured her he would do. Although Ms. Pearce gave clear instructions to McGettrick that she was transferring her retirement assets to the defendants to ensure that they were professionally managed, the defendants failed to monitor the accounts as promised.

23.    Despite McGettrick's positive representations about his own levels of experience and professional ability, he actually had been certified as a financial planner for only about a month at the time he was first speaking with Ms. Pearce. McGettrick never disclosed this to Ms. Pearce even though she specifically was seeking the assistance of an experienced investment advisor.

24.    After the initial purchases were made for Ms. Pearce, when she inquired about the status of her accounts, the defendants reaffirmed that her funds were properly invested in accordance with her investment objectives and risk tolerance. The defendants actively encouraged Ms. Pearce to keep her funds in the two Insight Capital and TCW funds. When Ms. Pearce would inquire about what appeared to be a decline in her accounts' value, the defendants insisted that any such losses were only attributable to a general downturn in the stock markets and that her accounts would most certainly see a rebound in value if she remained in the two funds.

25. Despite the defendants' representations and assurances, Ms. Pearce's accounts continued on what would become a dramatic decline in value. Neither McGettrick nor anyone else from the Company ever contacted Ms. Pearce during this time to discuss these losses, to reassess her investment positions, to recommend other, more suitable investments, or to reduce the serious risk exposure they had created in the accounts.

26. In or about June 2001, Ms. Pearce contacted the Company to discuss the losses she had incurred. Ms. Pearce spoke with the Company's president, Defendant David Duchesneau, who told her that McGettrick was no longer with the Company and that another employee had been assigned to monitor her funds. Ms. Pearce informed Duchesneau that she had not been contacted by anyone from the Company and had not been informed that McGettrick was no longer monitoring her funds.

27. Duchesneau told Ms. Pearce that he stood behind the recommendations made by McGettrick and believed that the recommendations were appropriate given her investment objectives. Duchesneau further stated that the losses Ms. Pearce had suffered were due to the decline in the market and that she should expect to see a rebound. Still the defendants took no action to assist Ms. Pearce even though they knew that the risks and potential for loss associated with the recommended funds were more than Ms. Pearce could bear.

28. Despite having an obligation to do so, the defendants never gathered and documented sufficient information from Ms. Pearce about her investment objectives, financial goals, and tolerance for risk, such that the defendants (and anyone else who would rely on such information) could competently and properly manage her retirement assets and advise her in financial and investment matters.

29. It was not until several months after her conversation with Duchesneau that Ms. Pearce realized that the investments made for her by McGettrick and the Company were extremely speculative and were not in fact suitable for her, despite the statements by McGettrick and Duchesneau.

30. As soon as Ms. Pearce realized that her funds had been inappropriately invested, she promptly objected to the defendants. They were unresponsive. Frustrated by the defendants' unresponsiveness, and in an effort to mitigate her damages, Ms. Pearce closed her accounts on November 20, 2001. Unfortunately, while the Defendants had already received their commissions and fees, Ms. Pearce had lost the vast majority of her retirement funds.

## COUNT I

### BREACH OF CONTRACT
(against the Company, Duchesneau and McGettrick)

31. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 30.

32. By offering financial and advisory services for a fee to Ms. Pearce, by agreeing and representing to provide such services to Ms. Pearce, by accepting and maintaining Ms. Pearce's retirement assets and accounts, and by having Ms. Pearce process investment transactions through the Company based on the defendants' advice and expertise, the defendants entered into a contract with Ms. Pearce to provide her with competent services and advice on a continuous basis, to gather and document sufficient relevant information in order to properly advise Ms. Pearce, to serve the best interests of Ms. Pearce as a client and investor, to follow Ms. Pearce's instructions, and to ensure the legal and appropriate handling and supervision of Ms. Pearce's assets and accounts and transactions therein.

33. The defendants breached their agreements with Ms. Pearce through their conduct as set forth herein.

34. Ms. Pearce has been damaged by the defendants' breaches of contract.

## COUNT II

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(against the Company, Duchesneau and McGettrick)

35. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 34.

36. In every contract there is a legally implied covenant of good faith and fair dealing.

37. By virtue of the agreements that Ms. Pearce had with the defendants, the defendants also implicitly undertook the duties to deal fairly with and to act in good faith towards Ms. Pearce.

38. The defendants breached their convent of good faith and fair dealing with Ms. Pearce through their conduct set forth herein.

39. Ms. Pearce has been damaged by the breaches.

## COUNT III

### BREACH OF FIDUCIARY DUTY
(against the Company, Duchesneau and McGettrick)

40. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 39.

41. The defendants established themselves in a fiduciary relationship with Ms. Pearce.

42. The defendants knew that Ms. Pearce lacked sophistication and experience as a securities investor and encouraged her to rely on their investment experience to properly manage her retirement assets.

43. Ms. Pearce did rely on the defendants' investment expertise and assurances of proper account management.

44. The defendants further assured Ms. Pearce that her funds were being properly handled and that the investments made for her were suitable.

45. The nature of the services offered by the defendants, the assurances given by the defendants, and Ms. Pearce's need to rely on the defendants' purported professional expertise gave rise to a fiduciary duty of the utmost good faith, fairness and loyalty owed by the defendants to Ms. Pearce.

46. By virtue of their superior position in the relationship, the defendants were able to nurture a false trust with Ms. Pearce. The defendants readily exploited this trust.

47. The defendants breached their fiduciary duties to Ms. Pearce through the conduct as set forth herein.

48. Ms. Pearce has been damaged by the defendants' breaches of fiduciary duty

## COUNT IV

### VIOLATION OF CHAPTER 93A OF THE MASSACHUSETTS GENERAL LAWS
(against the Company, Duchesneau and McGettrick)

49. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 48.

50. At all relevant times, Ms. Pearce and the defendants, or their agents, were engaged in trade or commerce, which occurred substantially within the Commonwealth of Massachusetts, within the meaning of Mass. Gen. Laws ch. 93A.

51. The conduct and actions of the defendants set forth herein, individually and collectively, constitute unfair or deceptive acts or practices made unlawful by Mass. Gen. Laws ch. 93A.

52. The defendants' actions and conduct in violation of Chapter 93A were willful and knowing.

53. On or about April 26, 2002, Ms. Pearce, through her attorney, sent a demand letter to the defendants, pursuant to chapter 93A, describing generally the facts and allegations herein. A true and accurate copy of the demand letter is attached hereto as Exhibit A.

54. The defendants made no tender of settlement within the thirty days as provided in chapter 93A. The defendants have made no offer of settlement to date.

55. Ms. Pearce has been damaged by the violations of chapter 93A.

## COUNT V

### MASSACHUSETTS BLUE SKY LAWS
(against the Company, Duchesneau and McGettrick)

56. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 55.

57. Pursuant to Mass. Gen. Laws ch. 110A § 101: "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly (1) to employ any

8

device, scheme or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

58.  Massachusetts General Laws ch. 110A, § 410(a)(2) provides for civil liability in the event of any offer or sale of securities by means of an untrue statement or material omission.

59.  The defendants made untrue statements of material fact and omissions regarding, *inter alia*, their professional experience and abilities, their handling of Ms. Pearce's retirement assets and their management and oversight of her accounts, and their recommendations for appropriate investments.

60.  The defendants' actions and conduct set forth herein constitute material fraudulent misrepresentations and omissions that were relied upon by Ms. Pearce to her detriment.

61.  The defendants' actions and conduct set forth herein violated Mass. Gen. Laws ch. 110A §§ 101 and 410.

62.  Ms. Pearce has been damaged by the violations of the Massachusetts securities laws.

## COUNT VI

### FRAUD
(against the Company, Duchesneau and McGettrick)

63.  Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 62.

64.  The defendants made untrue statements of material fact and omissions regarding, *inter alia*, their professional experience and abilities, their handling of Ms. Pearce's retirement assets and their management and oversight of her accounts, and their recommendations for appropriate investments.

65.  These misrepresentations and omissions were made intentionally, with knowledge of their falsity, or with reckless disregard for their truth or falsity.

66. The misrepresentations and omissions were made with the intent to deceive and defraud Ms. Pearce.

67. Ms. Pearce reasonably relied upon the misrepresentations and omissions to her detriment.

68. Ms. Pearce has been damaged by the fraudulent misrepresentations and omissions.

## COUNT VII

### CONTROL PERSON LIABILITY UNDER MASSACHUSETTS SECURITIES LAWS
(against the Company and Duchesneau)

69. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 68.

70. The Company and its officers and executives, including Duchesneau, are statutory control persons pursuant to the Massachusetts Uniform Securities Act.

71. As control persons, the Company and its officers and executives, including Duchesneau, are jointly and severally liable for all violations of state laws committed by the Company's agents.

72. At all relevant times, McGettrick was an agent of the Company and was acting within the scope of his employment as an employee for the Company.

73. As a result of this relationship and McGettrick's conduct and actions during this relationship, the Company and Duchesneau are jointly and severally liable for McGettrick's wrongful actions and conduct set forth herein in accordance with Massachusetts securities laws, Mass. Gen. Laws ch. 110A, § 410(b).

## COUNT VIII

### RESPONDEAT SUPERIOR
(against the Company and Duchesneau)

74. Ms. Pearce realleges and incorporates by reference the allegations contained in paragraphs 1 through 73.

75. At all relevant times, McGettrick was acting within the scope of his employment as an employee for the Company.

76. As a result of this relationship and McGettrick's conduct and actions during this relationship, the Company and Duchesneau are jointly and severally liable for McGettrick's wrongful actions and conduct set forth herein pursuant to the doctrine of *respondeat superior.*

77. Ms. Pearce has been damaged by the wrongful actions and conduct for which the Company and Duchesneau should be held liable under the doctrine of *respondeat superior.*

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Desiree Pearce requests that this Court:

1. Enter judgment against the defendants and in favor of Ms. Pearce on each count of this Complaint;

2. Award Ms. Pearce damages and/or rescission in an amount to be determined at trial, together with interest and costs;

3. Award Ms. Pearce multiple damages, attorneys fees and costs as may be appropriate under her claim pursuant to Mass. Gen. Laws ch. 93A.

4. Award Ms. Pearce attorneys' fees and costs as may be appropriate under her claim pursuant to Mass. Gen. Laws ch. 110A;

5. Award such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

DESIREE PEARCE,

By her attorneys,

*/s/ Matthew J. Tuttle*

Matthew J. Tuttle, BBO# 562758
Sara B. Davis,   BBO# 648002
PERKINS, SMITH & COHEN, LLP
One Beacon St., 30th Floor
Boston, MA  02108
Phone:  (617) 854-4000

Dated:  March 9, 2004

28926-2-Complaint-0304

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _Desiree Pearce V._
   _The Duchesneau Group, Inc. et al._

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   __ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases.

   __ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   __ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   __ V. 150, 152, 153.

   04 11409 NG

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ___   **NO**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES ___   NO ___

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES ___   NO ___

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES ___   NO ___

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   YES ___   NO ___

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Jason C. Moreau, Murphy & Michaels, LLP_
ADDRESS _One Liberty Square, Boston, MA 02109_
TELEPHONE NO. _(617) 350-2700_

(Cover sheet local.wpd - 11/27/00)