UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DESIREE PEARCE )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>THE DUCHESNEAU GROUP, INC., )<br>DAVID MICHAEL DUCHESNEAU, )<br>and BRANT P. McGETTRICK )<br>)<br>Defendants. )<br>) | Civil Action No.: 04 11409 NG |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

The Duchesneau Group, Inc., David Michael Duchesneau, and Brant P. McGettrick (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) or, in the alternative, motion for more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

In the Complaint, Plaintiff alleges that in February 2000 she was referred to the Duchesneau Group, Inc. ("Duchesneau Group") to explore the possibility of retaining it and its employees as investment advisors to professionally manage her qualified retirement funds. (Compl. ¶ 5.) Plaintiff met with Defendant Brant McGettrick ("Mr. McGettrick"), an employee

---

[1] Although Plaintiff's well-pleaded allegations are taken as true for purposes of this Rule 12(b)(6) motion, the bald assertions, unsubstantiated conclusions, and unsupported characterizations set forth in the complaint are to be disregarded. See, e.g., LaChappelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (affirming dismissal); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (affirming dismissal); In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (dismissing complaint). Defendants reserve their right to dispute any and all allegations in the Complaint.

of the Duchesneau Group, who purportedly held himself out as a knowledgeable and experienced investment advisor who could provide professional expertise and investment advice. (Compl. ¶ 6.) Plaintiff allegedly informed Mr. McGettrick that she had "very little investment experience" and wanted to invest her retirement funds in a "conservative manner" that would "preserve" the funds for her retirement. (Compl. ¶ 7.) Plaintiff alleges that she informed Mr. McGettrick that she was in her early fifties and "was looking to retire in the relatively short term and certainly within five to ten years." (Compl. ¶ 8.)

Plaintiff contends that Mr. McGettrick assured her that he and the Duchesneau Group would regularly monitor her accounts and choose investments in accordance with her "conservative objectives." (Compl. ¶ 10.) Mr. McGettrick purportedly recommended that Plaintiff split her retirement funds into two managed accounts: Insight Capital Management's Non-Diversified Aggressive Growth Portfolio and TCW Asset Management's Small Cap Growth Fund. (Compl. ¶ 11.) According to Plaintiff, Mr. McGettrick represented that these managed funds were consistent with her "conservative investment objectives" and further assured her that he would carefully monitor the performance of these investments to ensure against losses." (Compl. ¶ 12.)

Plaintiff also alleges that Defendants failed to explain that the Duchesneau Group was not a licensed broker/dealer; that Mr. McGettrick was not a registered representative; that Plaintiff would be required to open an account at Salomon Smith Barney ("SSB") to open the managed accounts; that the managed accounts had wrap fees that included management fees and transaction costs; that Plaintiff would have to pay commissions and fees to SSB in addition to the outside money managers; and that Defendants would not be "the ones selecting the investments" for Plaintiff's accounts. (Compl. ¶¶ 14-18.)

2

Plaintiff maintains that the investments recommended by Mr. McGettrick and the Duchesneau Group "were not suitable" for her. (Compl. ¶ 19.) According to Plaintiff, the managed accounts were "risky and volatile by nature and were comprised mostly of stocks in technology companies and companies with small capitalization levels," which were unsuitable for someone with Plaintiff's "conservative investment objectives and relatively low tolerance for risk." (Compl. ¶ 19.)

Plaintiff alleges that when she "would inquire about what appeared to be a decline in the value of her accounts, Defendants insisted that any such losses were attributable to a general downturn in the stock markets and that her accounts would see a rebound in value if she remained in the managed accounts. (Compl. ¶¶ 24, 27.) Despite these assurances, "Plaintiff's accounts continued on what would become a dramatic decline in value." (Compl. ¶ 24.) In June 2001, Plaintiff contacted the Duchesneau Group to discuss the losses she had incurred. (Compl. ¶ 26.) Plaintiff contends that she spoke with Mr. Duchesneau, a principal and President of the Duchesneau Group, who informed her that he stood by the recommendations made by Mr. McGettrick and believed that those recommendations were appropriate given her investment objectives. (Compl. ¶ 27.) According to Plaintiff, Mr. Duchesneau further stated that the losses she had suffered were due to the decline in the market and that she should expect to see a rebound. (Compl. ¶ 27.)

Plaintiff admits that "several months after her conversation with Mr. Duchesneau" she realized that the investments made for her were extremely speculative and were not in fact suitable for her. (Compl. ¶ 29.)

3

## SUMMARY OF PLAINTIFF'S CLAIMS

The Complaint alleges six counts against all defendants, including claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, violation of Chapter 93A of the Massachusetts General Laws (M.G.L. c. 93A), violation of the Massachusetts securities laws, and fraud. The Complaint also alleges two counts against the Duchesneau Group and Mr. Duchesneau for control person liability under Massachusetts securities laws and respondeat superior. Plaintiff seeks compensatory damages and/or rescission, multiple damages and attorneys fees under M.G.L. c. 93A, and attorney fees under the Massachusetts securities laws.

## SUMMARY OF THE ARGUMENT

Plaintiff's Complaint fails to meet even the minimal pleading requirements mandated by the Federal Rules of Civil Procedure. The contract-based claims, Counts I (Breach of Contract) and II (Breach of the Implied Covenant of Good Faith and Fair Dealing), must be dismissed because Plaintiff fails to plead a written contract, and any alleged oral contract fails for want of consideration. The fraud-based claims, Count V (Massachusetts Blue Sky Laws), Count VI (Fraud), and Count VII (Control Person Liability Under the Massachusetts Securities Laws), fail as a matter of law because the complaint does not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The breach of fiduciary duty claim, Count III, fails because Plaintiff has not plead any facts from which this Court may infer that her relationship with Defendants was fiduciary in nature. The Respondeat Superior claim, Count VIII, fails as to Mr. Duchesneau because Plaintiff has asserted no allegations to suggest that Mr. Duchesneau individually should be held liable for the acts of Mr. McGettrick.

This Court should dismiss the aforementioned claims or, in the alternative, require Plaintiff to file a sufficiently pled Amended Complaint.

## ARGUMENT

I. **Standard of Review**

Defendants assert their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, their Motion for a More Definite Statement under Rule 12(e) of the Federal Rules of Civil Procedure. The applicable standards of review are as follows:

A. The Rule 12(b)(6) Pleading Standard

Dismissal is proper pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. See The Dartmouth Review et al. v. Dartmouth Coll. et al., 889 F.2d 13, 16 (1st Cir. 1989) (affirming dismissal). This Court must accept all well-pled factual averments as true and draw all reasonable inferences therefrom in Plaintiff's favor. Id. In so doing, the Court should "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Id. (citing Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.) *cert. denied,* 483 U.S. 1021, 97 L. Ed. 2d 765, 107 S. Ct. 3266 (1987)). The threshold for stating a claim may be low, but it is real. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) (affirming dismissal). Minimal requirements are not tantamount to nonexistent requirements. Id. Thus, Plaintiff is obliged to set forth in her complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory. Id. at 515.

B.    The Rule 12(e) Standard

Federal Rule of Civil Procedure 12(e) provides, in pertinent part, that "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." A Rule 12(e) motion should be granted when a party is unable to determine the issues he must meet. See Guilbeault v. R.J. Reynolds Tobacco Co., No. 98-035L, 1998 U.S. Dist. LEXIS 17948, *5 (D. R.I. July 24, 1998) (granting motion for more definite statement). Rule 12(e) motions assist the Court in "the cumbersome task of sifting through the myriad of claims, many of which may be foreclosed by various defenses," in a complaint that is "overly prolix or complex." Id. (citing 2 James Wm. Moore, et al., Moore's Federal Practice P. 12.36[1] (3d ed. 1998)).

## II. Plaintiff's Contract-Based Claims Fail as a Matter of Law

A.    Plaintiff Has Failed to Identify the Contract that Forms the Basis of Her Breach of Contract Claim, Much Less Adequately Plead Consideration

To state a claim for breach of contract, Plaintiff must demonstrate that (1) there was an agreement supported by valid consideration; (2) Plaintiff was willing and able to perform; (3) Defendants' breach prevented Plaintiff's performance; and (4) Plaintiff suffered damages. See, e.g., Singarella v. City of Boston, 342 Mass. 385, 386, 173 N.E.2d 290, 291 (1961).

Even under the lenient pleading standards of Federal Rule of Civil Procedure 8(a), Plaintiff's allegations do not state a claim for breach of contract. Plaintiff has neither identified the contract that purportedly forms the basis of her breach of contract claim, nor specified whether it is written or oral.[2] Rather, she simply asserts that "the defendants entered into a contract with Ms. Pearce to provide her with competent services and advice on a continuous

---

[2] Presumably, Plaintiff fails to reference a written contract because no such contract exists.

basis, to gather and document sufficient relevant information in order to properly advise Ms. Pearce, to serve the best interests of Ms. Pearce as a client and investor, to follow Ms. Pearce's instructions, and to ensure the legal and appropriate handling and supervision of Ms. Pearce's assets and accounts and transactions therein." (Compl. ¶ 32.) These allegations are plainly insufficient.

At a bare minimum, Plaintiff must identify the contract that forms the basis of her claims and indicate whether it is oral or written. See Precise-Marketing Corp. v. Simpson Paper Co., No. 95-5629(LMM), 1996 U.S. Dist. LEXIS 7337, *4-5 (D.N.Y. May 17, 1996) ("In order to know whether to plead affirmative defenses based on applicable statutes of limitations and statutes of fraud, defendant must know whether a contract is written or oral."); Latch String, Inc., et al. v. The Rouse Co., et al., No. 76-1502, 1977 U.S. Dist. LEXIS 18086, *5 (D.D.C. Jan. 4, 1977) ("Courts have held that under Rule 12(e) a plaintiff in a contract action may be required to state the duration of the alleged agreement and whether it was oral or written so that the defendant can know whether to plead affirmative defenses based on applicable statutes of limitations and statutes of fraud."). Plaintiff must further allege when the breach occurred, what the breach consisted of, and how or in what manner the breach occurred. See Massachusetts Highway Dept., et al. v. Walsh Constr. Co. of Ill., 14 Mass. L. Rep. 608 (Mass. Super. Ct. 2002) (granting defendants' motion for more definite statement). Plaintiff's allegations as to the nature of the contract and the alleged breach are wholly insufficient and should be dismissed.

Even if Plaintiff has plead the requisite details of the contract at issue, Plaintiff fails to plead that the purported contract is supported by consideration – a necessary element of Plaintiff's contract claim. See Singarella, 342 Mass. at 386, 173 N.E.2d at 291 (1961). Absent

7

allegations that the contract was supported by valid consideration, Plaintiff's contract claim must fail.

      B.      Plaintiff's Breach of Good Faith and Fair Dealing Claim Fails Because There is No Underlying Contract

In order for Plaintiff to demonstrate a breach of the implied covenant of good faith and fair dealing, she must demonstrate that there existed an enforceable contract between the parties and that Defendants did something that had the effect of destroying or injuring Plaintiff's right to receive the fruits of the contract. See Bateman v. Federal Deposit Insurance Corp., 112 F. Supp. 2d 89, 97 (D. Mass. 2000) (dismissing complaint, holding that there is no claim for breach of the implied covenant of good faith and fair dealing where there was no enforceable contract); Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 131, 575 N.E.2d 370 (1991) (implied covenant of good faith and fair dealing did not apply because parties had not reached a binding contract).

Here, Plaintiff's breach of good faith and fair dealing claim rests simply on hollow references to "the agreements that Ms. Pearce had with the defendants." (Compl. ¶ 37.) As discussed above, Plaintiff has failed to plead facts sufficient to demonstrate that a contract exists. Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing must fail.

### III.    Plaintiff's Fraud-Based Claims Fail as a Matter of Law

Plaintiff's fraud-based claims (Count V – Massachusetts Blue Sky Laws, Count VI – Fraud, and Count VII – Control Person Liability Under Massachusetts Securities Laws) fail as a matter of law because the complaint does not satisfy the heightened pleading requirements of Rule 9(b).[3]

---

[3] With respect to her Massachusetts Securities Law claims, Plaintiff has alleged that "[t]he defendants' actions and conduct set forth herein constitute *material fraudulent misrepresentations and omissions....*" (Compl. ¶ 60) (emphasis added). Accordingly, Plaintiff's Massachusetts Securities Law claims "sound in fraud" and must

Rule 9(b) mandates that allegations of fraud must be plead with particularity. See <u>Bailey, et al., v. Linsco/Private Ledger Corp.</u>, 136 F.R.D. 11, 13 (D. Me. 1991) (concluding that investor's fraud claims against securities broker and two employees fell short of Rule 9(b)'s requirements); Fed. R. Civ. P. 9(b) ("in all averments of fraud..., the circumstances constituting fraud ... shall be stated with particularity.").

The First Circuit has strictly applied Rule 9(b), holding that to state to state a claim for fraud, plaintiffs must specify the time, place, and content of the allegedly false or fraudulent representation. See <u>Alton v. Prudential-Bach Securities, Inc.</u>, 753 F. Supp. 39, 43 (D. Mass. 1990) (granting investment firm's motion to dismiss investor's claims of fraud, violations of federal securities law, and unfair or deceptive practices). Conclusory allegations of fraud will not suffice. See <u>United States of America ex rel. Karvelas v. Melrose-Wakefield Hospital, et al.</u>, No. 01-10583-DPW, 2003 U.S. Dist. LEXIS 8846, *14 (D. Mass. 2003) ("claims of fraud may not be based upon speculation or conclusory allegations").

Plaintiff's fraud claims are based on Defendants' alleged promises to monitor her accounts and to choose investments in accordance with her investment objectives, as well as on Defendants' optimistic predictions as to future events. (See, e.g., Compl. ¶¶ 12, 19, 22, 24, 27.) Although the complaint specifies the content of some alleged misrepresentations, Plaintiff does not identify with the requisite particularity when or where the alleged misrepresentations were made.

---

meet the heightened pleading requirements of Rule 9(b). See, e.g., <u>Driscoll v. Landmark Bank for Savings, et al.</u>, 758 F. Supp. 48, 51 (D. Mass. 1991) (granting bank's motion to dismiss investor's claims, noting that "[w]hen a complaint sounds in fraud, Rule 9(b) requires that the allegations of fraud be plead with particularity."); <u>In re Rospatch Sec. Litigation, Atlantis Group, Inc. v. Rospatch Corp., et al</u>, 760 F. Supp. 1239, 1259 (W.D. Mich. 1991) (dismissing state securities fraud claims that "sound in fraud" for failure to meet the particularity requirements of Rule 9(b)).

9

Nor does the complaint contain any allegations to suggest that Defendants acted with fraudulent intent, i.e. that the representations and optimistic predictions as to future events were false at the time they were made. See, e.g., In re Chipcom Corp. Sec. Litig., 95-11114-DPW, 1996 U.S. Dist. LEXIS 22257, *35 (D. Mass. 1996) ("optimistic predictions about the future that prove to be off the mark ... are immunized unless plaintiffs meet their burden of demonstrating intentional deception."); Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp., et al., No. 98-1435-D, 2002 Mass. Super. LEXIS 181, *22-23 (Mass. Super. Ct. June 13, 2002) ("A statement of present intention can support a claim of fraud only if it is false when made--that is, if the speaker does not in fact have the stated intention at the time of the statement.") (citing Starr v. Fordham, 420 Mass. 178, 187, 648 N.E.2d 1261, 1267 (1995)). Rather, Plaintiff asserts in conclusory fashion that Defendants recommended investments that "were not suitable for her" and "failed to monitor [her] accounts as promised." (Compl. ¶¶ 22, 29.) Such allegations fall far short of the heightened pleading requirements of Rule 9(b).

Specific examples of Rule 9(b) pleading deficiencies include:

| **Alleged Misrepresentation** | **Rule 9(b) Pleading Deficiencies** |
|---|---|
| McGettrick assured Ms. Pearce that he and the Company would regularly monitor her accounts and choose investments in accordance with her conservative objectives. (Compl. ¶ 10.) | • When did McGettrick make these assurances?<br>• Where/how did McGettrick make these assurances?<br>• What allegations suggest that these assurances were false at the time they were made? |
| McGettrick represented to Ms. Pearce that the managed funds were consistent with her conservative investment objectives and further assured Ms. Pearce that he would carefully monitor the performance of these investments to ensure against losses. (Compl. ¶ 12.) | • When did McGettrick make these representations and assurances?<br>• Where/how did McGettrick make these representations and assurances?<br>• What allegations suggest that these representations and assurances were false at the time they were made? |
| [W]hen [Plaintiff] inquired about the status of her accounts, the defendants reaffirmed that | • Who made these reaffirmations?<br>• When were these reaffirmations |

10

| | |
|---|---|
| her funds were properly invested in accordance with her investment objectives and risk tolerance. (Compl. ¶ 24.) | made?<br>• Where/how were these reaffirmations made?<br>• What allegations suggest that these reaffirmations were false at the time they were made? |
| When Ms. Pearce would inquire about what appeared to be a decline in her accounts' value, the defendants insisted that any such losses were only attributable to a general downturn in the stock markets and that her accounts would most certainly see a rebound in value if she remained in the two funds. (Compl. ¶ 24.) | • Who made these representations?<br>• When were these representations made?<br>• Where/how were these representations made?<br>• What allegations suggest that these representations were false at the time they were made? |
| Duchesneau told Pearce that he stood behind the recommendations made by McGettrick and believe that the recommendations were appropriate given her investment objectives. Duchesneau further stated that the losses Ms. Pearce suffered were due to the decline in the market and that she should expect to see a rebound. (Compl. ¶ 27.) | • When did Duchesneau make these representations?<br>• Where/how did Duchesneau make these representations?<br>• What allegations suggest that these representations were false at the time they were made? |

Plaintiff's allegations regarding Defendants' representations as to their professional experience and abilities are equally unavailing. Plaintiff asserts that "[d]espite McGettrick's positive representations about his own levels of experience and professional ability, he actually had been certified as a financial planner for only about a month at the time he was first speaking with Ms. Pearce." (Compl. ¶ 23.) However, Plaintiff has failed to specify what he said about his experience and ability, much less when and where he made the alleged misrepresentations. Nor does Plaintiff allege any facts to suggest that the representations McGettrick made were false, other than to merely assert that he was not certified as a financial planner until one month prior to his first communications with Plaintiff.

2.  Plaintiff Has Failed to Allege Facts Sufficient to Show that the Quality of the Stocks Purchased Was Inappropriate for Her Investment Objectives

"In addition to the time, place, and person requirements under Rule 9(b), when alleging unsuitability the plaintiff must also 'show that the *quality* of the stocks bought was inappropriate to his investment objectives.'" Alton v. Prudential-Bach Securities, Inc., 753 F. Supp. 39, 43, 1990 U.S. Dist. LEXIS 17277, *9 (D. Mass. 1990) (granting investment firm's motion to dismiss investor's complaint that alleged claims of common law fraud, violations of federal securities law, and unfair or deceptive practices) (quoting Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 5 (1st Cir. 1983)) (emphasis in the original).

In Alton, as here, the plaintiff alleged that she purchased securities based on her investment firm's recommendation. Alton, 753 F. Supp. at 40. When some of the securities declined in value, the plaintiff sued the investment firm for common law fraud, violations of the federal securities laws, and unfair or deceptive practices. Id. at 40-41. In granting the investment firm's motion to dismiss, this Court noted:

> As more than one court has observed, 'That there are risks inherent in stock market investment is, in our view, information so basic that it need not be disclosed by the broker.' The fact that two out of the four securities recommended by the defendants subsequently decline in value says nothing about the *quality* of the stocks when they were purchased in 1986, or how the stocks were inappropriate in light of the plaintiff's only stated investment objective, his daughter's 'investment security.'

Id. at 43. Likewise, here, Plaintiff has failed to allege facts sufficient to show that the quality of the investments were unsuitable for her investment objectives.

For all of the above-stated reasons, Plaintiff has failed to meet the heightened pleading requirements of Rule 9(b) with respect to her fraud-based claims. Accordingly, Counts V (Massachusetts Blue Sky Laws), VI (Fraud), and VII (Control Person Liability Under Massachusetts Securities Laws) should be dismissed.

### IV. Plaintiff's Breach of Fiduciary Duty Claim Fails Because She Has Not Plead Any Facts to Suggest that Her Relationship with Defendants was Fiduciary in Nature

Plaintiff asserts that she "lacked sophistication and experience as a securities investor" and relied on Defendants "investment experience to properly manage her retirement assets." (Compl. ¶ 42.) The Massachusetts Supreme Court has held, however, that "a business relationship between a broker and a customer does not become a general fiduciary relationship merely because an uninformed customer reposes trust in a broker who is aware of the customer's lack of sophistication." Patsos v. First Albany Corp., 433 Mass. 323, 335, 741 N.E.2d 841, 851 (2001). The Patsos court specifically stated that had Plaintiff "merely alleged 'in very general terms' that he trusted [the defendant], that [the defendant] was aware of his inexperience, and that he had transferred funds for [the defendant] to invest on his behalf, that would be insufficient to establish that [the plaintiff] and [the defendant] had entered into a fiduciary relationship." Id. at 851-52 (citing Vogelaar v. H.L. Robbins & Co., Inc., 348 Mass. 787, 204 N.E.2d 461 (1965)).

In addition, the First Circuit and this Court have routinely held that, under Massachusetts law, a simple broker-customer relationship is not fiduciary in nature, *even if a broker has encouraged the trust of an unsophisticated customer*. See Lefkowitz, etc. v. Smith Barney, Harris Upham & Co., Inc., 804 F.2d 154, 155 (1st Cir. 1986) (affirming dismissal of complaint where allegations of customer's minimal knowledge of investments and reliance on account executive who also was close personal friend was insufficient to warrant finding of fiduciary relationship because "a simple stockbroker-customer relationship does not constitute a fiduciary relationship in Massachusetts."); Cannistraci, et al., v. Dean Witter Reynolds, Inc., et al., 796 F. Supp. 619, 623 (D. Mass. 1992) (granting brokerage firm's motion to dismiss breach of fiduciary duty claims, holding that "a simple stockbroker-customer relationship does not constitute a

fiduciary relationship in Massachusetts"); McIntyre, et al. v. Okurowski, et al., 717 F. Supp. 10, 11, 1989 U.S. Dist. LEXIS 601, *2 (D. Mass. 1989) (granting stockbrokers' and financial corporation's motion to dismiss, holding that "a simple stockbroker-customer relationship does not constitute a fiduciary relationship").

Plaintiff's allegations are exactly the type of general allegations that the Patsos, Lefkowitz, Cannistraci, and McIntyre found did not give rise to a fiduciary duty. Absent allegations from which this Court could infer a fiduciary duty, Plaintiff cannot demonstrate that Defendants breached that duty. Accordingly, Plaintiff's breach of fiduciary duty claim fails as a matter of law under Federal Rule of Civil Procedure 12(b)(6) and should be dismissed.

V.  **Plaintiff's Claim for Respondeat Superior Against Mr. Duchesneau Fails Because She Has Not Plead Any Facts to Suggest He Employed Mr. McGettrick**

Respondeat superior is a legal theory that holds an employer vicariously liable for the torts of its employee committed within the scope of employment. See Dias v. Brigham Med. Assoc., 438 Mass. 317, 320, 780 N.E.2d 447 (2002). Here, Plaintiff merely alleges that Mr. McGettrick was an employee of the Duchesneau Group, a corporation with a principal place of business in Weston, Massachusetts (Compl. ¶¶ 2, 4) and that Mr. Duchesneau was a principal and president of the Duchesneau Group (Compl. ¶ 3). Assuming, *arguendo*, that the complaint has set forth sufficient allegations to state a claim for respondeat superior liability against the Duchesneau Group, Plaintiff has asserted no allegations to suggest that Mr. Duchesneau individually should be held liable for the acts of Mr. McGettrick. Any respondeat superior claim against Mr. Duchesneau, as an individual, must fail as a matter of law.

## CONCLUSION

There is no written contract, and any alleged oral contract fails for want of consideration. Accordingly, the contract-based claims, Counts I (Breach of Contract) and II (Breach of the

14

Implied Covenant of Good Faith and Fair Dealing), should be dismissed. Alternatively, Defendants respectfully request that the Court order Plaintiff to set forth a more definite statement of her contract-based claims, identifying the contract or contracts at issue, when the breach occurred, what the breach consisted of, and how or in what manner the breach occurred.

Plaintiff has failed to meet the heightened pleading requirements of Rule 9(b) with respect to her fraud-based claims. Accordingly, Counts V (Massachusetts Blue Sky Laws), VI (Fraud), and VII (Control Person Liability Under Massachusetts Securities Laws) should be dismissed. Alternatively, Defendants request that the Court order Plaintiff to file a more definite statement detailing when, where, and how the alleged misrepresentations were made and why the alleged misrepresentations were false when made.

Plaintiff has failed to allege any facts to demonstrate the existence of a fiduciary relationship. Accordingly, Count III (Breach of Fiduciary Duty) should be dismissed.

Plaintiff has asserted no allegations to suggest that Mr. Duchesneau individually should be held liable for the acts of Mr. McGettrick. Accordingly, Count VIII (Respondeat Superior) should be dismissed as to Mr. Duchesneau.

Respectfully submitted,

Pete S. Michaels
psm@mmmslaw.com
Derek C. Anderson
dca@mmmslaw.com
Debbie G. Evans
dge@mmmslaw.com
MURPHY & MICHAELS, LLP
One Liberty Square
Boston, Massachusetts 02109
(617) 350-7700

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2004, a true and correct copy of the foregoing Motion to Dismiss or in the alternative for a More Definite Statement was delivered by hand to the following counsel of record for Plaintiff: Matthew J. Tuttle, Esq., Perkins, Smith & Cohen, LLP, One Beacon Street, 30th Floor, Boston, MA 02108.

_____
Derek C. Anderson