# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>)<br>**DESIREE PEARCE** )<br>) <br>**Plaintiff,** )<br>**vs.** )<br>)<br>**THE DUCHESNEAU GROUP, INC.,** )<br>**DAVID MICHAEL DUCHESNEAU,** )<br>**and BRANT P. McGETTRICK** )<br>)<br>**Defendants.** )<br>) | **Civil Action No.: 04 11409 NG** |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

The Duchesneau Group, Inc., David Michael Duchesneau, and Brant P. McGettrick (collectively "Defendants"), by their undersigned counsel, respectfully submit this reply memorandum of law in further support of their Motion to Dismiss the Complaint or, in the Alternative, Motion for More Definite Statement ("Defendants' Motion").

I.    DEFENDANTS ARE ENTITLED TO KNOW THE TERMS OF THE
      CONTRACT UPON WHICH THEIR LIABILITY IS PREDICATED
      AND WHETHER THE ALLEGED CONTRACT IS ORAL OR WRITTEN

It appears from Plaintiff's Opposition Brief that she is alleging that Defendants breached an oral contract, though for some reason she is reluctant to come out and say so.  It would be patently unfair to permit Plaintiff to imply now that the contract is oral, leaving Defendants open

to a later claim that it is written. Defendants are entitled to know whether the alleged contract at issue is oral or written so they may formulate their Answer.[1]

Moreover, the Complaint makes reference to several alleged oral representations. To the extent that Plaintiff is asserting that Defendants breached an oral contract, Defendants need to know which of those oral promises form the basis of her breach of contract claim and the dates on which those oral promises were made in order to formulate their answer. See Cherry Creek Woodcraft, Inc. vs. Plum Creek Man., Inc., No. 94-CV-0601E(H), 1995 U.S. Dist. LEXIS 10123, *5 (W.D.N.Y. July 17, 1995) (granting motion to dismiss, noting that "[a] complaint in a breach of contract action must ... set forth whether the contract is written or oral and the terms of the contract upon which liability is predicated.").

Plaintiff states in her opposition brief that "the Defendants have not asked the Court to order a more definite statement with respect to anything in the Complaint." (Pl.'s Opp'n at 8.) However, Defendants did exactly that in their Motion. Defendants suggested that, "[a]t a bare minimum, Plaintiff must identify the contract that forms the basis of her claims and indicate whether it is oral or written." (Defs.' Mot. at 7.) Defendants respectfully request that the Court either dismiss Count I or order Plaintiff to specify whether the contract at issue is oral or written and, if oral, to identify which oral representations allegedly form the basis of her breach of contract claim.[2]

---

[1]    In her opposition brief, Plaintiff cites Raytheon Co. v. Continental Cas. Co., 123 F. Supp. 2d 22, 27 (D. Mass. 2000) in support of her assertion that "[t]here is simply no requirement that a complaint must identify whether a contract is written or oral or both...." (Pl.'s Opp'n at 7.) Raytheon, however, is inapposite. The Raytheon court did not even address this issue because there, unlike here, the contracts at issue were *written*, not oral, and, as the Court noted, the Plaintiff "sufficiently identified the policies at issue by number and coverage period." Id. at 12.

[2]    Plaintiff's breach of contract claim also fails for want of consideration. Plaintiff asserts in her opposition brief that "the allegations in the complaint do in fact establish adequate consideration for the Defendants' contract; in exchange for a fee paid by Ms. Pearce, the Defendants agreed to provide Ms. Pearce with their advice and expertise as to how to best invest her retirement funds." (Pl.'s Opp'n at 6.)

II.   PLAINTIFF'S BREACH OF THE COVENANT OF GOOD
      FAITH AND FAIR DEALING CLAIM SUFFERS FROM THE
      SAME INADEQUACIES AS HER BREACH OF CONTRACT CLAIM

Plaintiff has failed to state a claim for breach of the covenant of good faith and fair

dealing for the reasons discussed in Section I above. As Plaintiff acknowledges, in order to state

such a claim, she must allege that there existed an enforceable contract between the parties and

that Defendants did something that had the effect of destroying or injuring her right to receive

the fruits of that contract. (Pl.'s Opp'n at 9.) See also Bateman v. Federal Deposit Ins. Corp.,

112 F. Supp. 2d 89, 96-97 (D. Mass. 2000) (dismissing breach of convenant of good faith and

fair dealing claim where plaintiff failed to plead that there was an enforceable contract).

Until such time as Plaintiff adequately pleads the existence of a valid and enforceable

contract, Plaintiff's breach of the covenant of good faith and fair dealing claim must fail.

Accordingly, Defendants respectfully request that the Court dismiss Count II.

III.  PLAINTIFF'S FRAUD-BASED CLAIMS, INCLUDING HER
      MASSACHUSETTS BLUE SKY LAWS CLAIMS, DO NOT
      SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF
      RULE 9(B) AND, THEREFORE, MUST FAIL AS A MATTER OF LAW

      A.    Plaintiff's Massachusetts Blue Sky Laws claims sound in fraud
            and, therefore, must satisfy the particularity requirements of Rule 9(b)

Plaintiff contends that, because fraud is not a specific element of her Massachusetts

Uniform Securities Act claims, the heightened pleading requirements of Federal Rule of Civil

Procedure 9(b) do not apply to Counts V and VII. The four cases Plaintiff cites in support of this

argument are unavailing. Stein and City of Worcester are inapposite, and Generadora and

Giarraputo actually undercut Plaintiff's argument.

---

Plaintiff cites paragraph 13 of the complaint in support of this assertion. However, there are no
allegations in paragraph 13 with respect to any fees to be paid by Ms. Pearce to Defendants in exchange
for their investment advice and expertise. (Compl. ¶ 13.) In fact, the complaint does not allege that
Plaintiff actually paid any fees to Defendants.

In Stein v. Smith, 270 F. Supp. 2d 157, 167 (D. Mass. 2003), a case that did not involve securities law violations, this Court merely declined to extend the Rule 9(b) pleading requirements to ERISA breach of fiduciary duty claims.  Likewise, in City of Worcester v. HCA Mgmt. Co., No. 90-40012-GN, 1994 U.S. Dist. LEXIS 4505, * 1 (D. Mass. Apr. 7, 1994), another case that did not involve securities law violations, the Court applied the Rule 9(b) pleading requirements to the fraudulent misrepresentation claim, but declined to extend the heightened pleading requirements to the negligent misrepresentation claim.

In Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8 (D.P.R. 2000), the Court considered whether the heightened pleading requirements of Rule 9(b) apply to dolo claims.  Id. at 17-21.  Finding little guidance in Puerto Rican jurisprudence and treatises, the Court applied the "traditionally accepted" concept of fraud.  Id. at 20.  The Court noted that "there is fraud where there is (1) a false representation of a material fact; (2) knowledge of or belief in the representation's falsity by the person making it; (3) belief in the representation's truth by the person to whom the representation is made; (4) intent that the representation should be acted upon; and (5) detrimental reliance upon the representation by the person claiming to have been deceived."  Id. at 20.  The Court noted that "only when a party's pleadings of 'dolo' involve the elements of fraud as set forth above, will this Court require that party's pleadings to meet the specificity requirements of Rule 9(b)."  Id.

Plaintiff's Massachusetts Blue Sky Laws claims involve the elements of fraud set forth in Generadora.  Plaintiff has alleged that (1) Defendants made false representations of material fact (Compl. ¶¶ 12, 23-24); (2) Defendants had knowledge of or belief in the falsity of the representations (Compl. ¶¶ 20); (3) Plaintiff believed that the representations were true (Compl. ¶ 13); (4) Defendants intended that the representations be acted upon (Compl. ¶¶ 6, 10); and (5)

4

Plaintiff relied to her detriment on the representations. (Compl. ¶ 25, 29-30.) Accordingly, under the analysis set forth in Generadora, the specificity requirements of Rule 9(b) apply to Plaintiff's Massachusetts Blue Sky Laws claims. Generadora, 92 F. Supp. 2d at 20.

Finally, Giarraputo v. UnumProvident Corp., No. 99-301-P-C, 2000 U.S. Dist. LEXIS 19138 (D. Me. Nov. 8, 2000), undermines Plaintiff's argument that the heightened pleading requirements of Rule 9(b) do not extend to claims brought under the Massachusetts Uniform Securities Act. There, the Court acknowledged that, although fraud is not an element of claims brought under Sections 11 and 12(a)(2) of the Securities Act of 1933, "if a plaintiff were to attempt to establish violations of Sections 11 and 12(a)(2) as well as the anti-fraud provision of the [Securities] Exchange Act through allegations in a single complaint of a unified course of fraudulent conduct, fraud might be said to lie at the core of the action." Id. at 35 (internal quotations and citations omitted). The Court noted that "[t]he dividing line between allegations regarding false or misleading statements and omissions and allegations of fraud consists of scienter" and declined to apply the Rule 9(b) requirements to the Section 11 and 12(a)(2) claims because there were no allegations to suggest fraudulent conduct. Id. at 37.

Here, Plaintiff *has* alleged scienter with respect to the alleged misrepresentations that form the basis of her Massachusetts Blue Sky Laws claims, as well as a unified course of fraudulent conduct that lies at the core of the action. In her opposition brief, Plaintiff states that "[t]he Complaint sets forth in detail the *knowing* false representations made by the Defendants, including: misrepresentations related to their expertise and experience (¶ 23); misrepresentations relating to the suitability of the investments they recommended for Ms. Pearce's retirement funds (¶¶ 11, 12); misrepresentations regarding the monitoring services they would provide for Ms. Pearce's retirement funds (¶¶ 10, 26); and misrepresentations and omissions regarding the fees

and commissions Ms. Pearce would incur (¶ 16)."  (Pl.'s Opp'n at 12-13) (emphasis added.)

Plaintiff further states that "the complaint alleges that the Defendants *knew, or had reason to know,* of their misstatements or omissions to Ms. Pearce."  (Pl.'s Opp'n at 11.)

Plaintiff cannot credibly claim that her Massachusetts Securities Law claims do not sound in fraud when the allegations of securities law violations set forth under Count V explicitly state that "[t]he defendants' actions and conduct set forth herein constitute material *fraudulent* misrepresentations and omissions that were relied upon by Ms. Pearce to her detriment." (Compl. ¶ 60) (emphasis added.)

Where, as here, alleged securities violations "sound in fraud," they must satisfy the Rule 9(b) particularity requirements.  See, e.g., Giarraputo, 2000 U.S. Dist. LEXIS 19138, *18-21 (discussed above).  See also In re Rospatch Sec. Litig., Atlantis Group, Inc. v. Rospatch Corp., 760 F. Supp. 1239, 1259 (W.D. Mich. 1991) (dismissing, as to certain defendants, *state securities fraud* claims that "sound in fraud" for failure to meet the particularity requirements of Rule 9(b)) (emphasis added).

      B.      Plaintiff's fraud-based claims do not satisfy
             the heightened particularity requirements of Rule 9(b)

            1.      Plaintiff has not alleged when, where,
                    and how the alleged misrepresentations were made

In her opposition brief, Plaintiff simply reiterates the same series of alleged misrepresentations, with no accompanying detail as to when, where, and how the alleged misrepresentations were made.  (Pl.'s Opp'n at 12-13.)  Ignoring the cases cited by Defendants, Plaintiff maintains that she is not required to identify the time and place of the alleged misrepresentations.  In support of this assertion, she cites United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39 (D. Mass. 2001).

Parke-Davis, however, does not stand for the proposition that a plaintiff need not identify the time and place of the allegedly fraudulent misrepresentations. Rather, Parke-Davis simply stands for the unremarkable proposition that Rule 9(b) must be read in conjunction Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of the claim. Id. at 46.

Parke-Davis was a qui tam action under the False Claims Act in which the relator alleged, among other things, that his former employer engaged in a fraudulent scheme to promote the sale of Neurontin and that this illegal marketing campaign caused the submission of numerous false claims to the Veterans Administration and to Medicaid. Id. at 43. The defendant moved for dismissal based, *inter alia*, on the relator's failure to plead fraud with particularity pursuant to Rule 9(b). Id. at 43-44. While noting that the relator "*must, at a minimum, set forth the who, what, when, where, and how of the alleged fraud*," the court recognized that the "strict application of requirements of Rule 9(b) may be relaxed in certain circumstances." Id. at 46-47 (emphasis added) (internal quotations and citations omitted).[3] Namely, the heightened pleading requirement may be relaxed where (i) the "facts underlying the fraud are peculiarly within the defendants' control"; or (ii) "the alleged scheme of fraud may involve numerous transactions or transactions that occur over a long period of time, and pleading the specifics with regard to every instance of fraudulent conduct may be impractical." Id. at 47 (internal quotations and citations omitted).

In the case at bar, the facts underlying the alleged fraud are not peculiarly within Defendants' control, nor does the alleged scheme to defraud involve numerous transactions or transactions occurring over a long period of time such that pleading the specifics with regard to

---

[3]    The Parke-Davis Court further noted that "[t]o pass Rule 9(b) muster, the complaint must plead with particularity the time, place, and contents of the false representations as well as the identity of the person making the false representations and what he obtained from them." Id. at 46.

Defendants' alleged fraudulent conduct is impractical. Rather, Plaintiff asserts that Defendants made a limited number of misrepresentations. At a minimum, with respect to each alleged misrepresentation, Plaintiff should be required to allege (i) who made the misrepresentation, (ii) where the misrepresentation was made, (iii) when the misrepresentation was made, and (iv) how the misrepresentation was made. See Alton v. Prudential-Bach Sec., Inc., 753 F. Supp. 39, 42-43 (D. Mass. 1990).

2.      Plaintiff has not alleged specific facts to suggest that Defendants
        knew the alleged misrepresentations false at the time they were made

Recent case law suggests that Plaintiff should also be required to allege specific facts that make it reasonable to believe that Defendants knew the alleged misrepresentations were false and misleading at the time they were made.

In her opposition brief, Plaintiff states "Defendants argue that the Plaintiff's claims for fraud must fail because the Complaint fails to allege that the Defendants acted with fraudulent intent…." (Pl.'s Opp'n at 14.) Defendants, however, have not argued that Plaintiff has failed to allege that Defendants acted with fraudulent intent. As discussed in Section III(A), the alleged fraudulent conduct lies at the core of the action.

What Defendants have argued is that Plaintiff has failed to allege any *facts* to support her *conclusory assertion* that the defendants acted with fraudulent intent; i.e. she has not alleged any facts to suggest that the defendants knew any of the alleged misrepresentations were false at the time they were made. (Defs.' Mot. at 10-11.) Although there are some cases that suggest Plaintiff need not allege fraudulent intent with particularity, see Alton, 753 F. Supp. at 42, more recent cases suggest that Plaintiff must set forth *specific facts* that make it reasonable to believe that the defendants *knew* the alleged misrepresentations were materially false or misleading *at the time they were made*. See Burstein v. Applied Extrusion Tech., Inc., 150 F.R.D. 433, 443 (D.

8

Mass. 1993) ("There can be no doubt in this Circuit, Rule 9(b) is applied to securities fraud claims with rigor. ...  A general averment of knowledge of falsity will not suffice; the complaint must also set forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.") (internal quotations and citations omitted).

Accordingly, Defendants respectfully request that the Court dismiss Counts V, VI, and VII or, in the alternative, require Plaintiff to (i) provide a more definite statement with respect to the time and place of the alleged misrepresentations, and (ii) set forth facts suggesting that the defendants knew the alleged misrepresentations were false at the time they were made.

## IV.    THE COMPLAINT CONTAINS NO FACTS TO SUGGEST THAT A FIDUCIARY RELATIONSHIP EXISTED BETWEEN PLAINTIFF AND DEFENDANTS

As discussed in Defendants' Motion, under well-settled Massachusetts law, a simple stockbroker-customer relationship is not fiduciary in nature *even if* the broker has encouraged the trust of an unsophisticated customer.  See Lefkowitz v. Smith Barney, Harris Upham & Co., Inc., 804 F.2d 154, 155 (1st Cir. 1986) (affirming dismissal of complaint where allegations of customer's minimal knowledge of investments and reliance on account executive who also was close personal friend were insufficient to warrant finding of fiduciary relationship because "a simple stockbroker-customer relationship does not constitute a fiduciary relationship in Massachusetts.").

Plaintiff's allegations that she was an inexperienced and unsophisticated investor who relied on Defendants' expertise are insufficient to state a claim for breach of fiduciary duty. Massachusetts courts, *including the Patsos court*, repeatedly have held that "a business relationship between a broker and a customer does *not* become a general fiduciary relationship merely because an uninformed customer reposes trust in a broker who is aware of the customer's lack of sophistication."  Patsos v. First Albany Corp., 433 Mass. 323, 335, 741 N.E.2d 841, 851

9

(2001). Pursuant to the holding in Patsos, where, as here, Plaintiff merely alleges in very general

terms that she trusted Defendants, that Defendants were aware of her inexperience, and that she

transferred funds to Defendants to invest on her behalf, that is *insufficient* to establish that

Plaintiff and Defendants entered into a fiduciary relationship. See id. at 851-52.

Plaintiff erroneously asserts that "[t]he question of whether a fiduciary relationship exists

as a result of a given fact pattern is a question of fact that is not appropriate for determination on

a motion to dismiss." (Pl.'s Opp'n at 15). Massachusetts courts *have*, on motions to dismiss,

dismissed breach of fiduciary duty claims under almost identical facts. See Cannistraci, v. Dean

Witter Reynolds, Inc., 796 F. Supp. 619, 623 (D. Mass. 1992) (granting brokerage firm's *motion

to dismiss* breach of fiduciary duty claims, holding that "a simple stockbroker-customer

relationship does not constitute a fiduciary relationship in Massachusetts"); McIntyre v.

Okurowski, 717 F. Supp. 10, 11 (D. Mass. 1989) (granting stockbrokers' and financial

corporation's *motion to dismiss*, holding that "a simple stockbroker-customer relationship does

not constitute a fiduciary relationship").[4]

---

[4]    Although these cases were decided prior to Patsos, they are still good law. As the Patsos court
noted, "If Patsos had merely alleged 'in very general terms' that he trusted Accomando, that Accomando
was aware of his inexperience, and that he had transferred funds for Accomando to invest on his behalf,
that would be insufficient to establish that Patsos and Accomando had entered into a general fiduciary
relationship." Patsos, 741 N.E.2d at 851-52 (citing Vogelaar v. H.L. Robbins & Co., 204 N.E.2d 461
(1965)). Moreover, the allegations in Patsos were far more detailed than Plaintiff's allegations here. As
the Supreme Judicial Court of Massachusetts noted:

> Patsos set out with precision in his affidavit uncontested statements that, if true, would permit a
> jury reasonably to find that Accomando's relationship with Patsos was not a business relationship
> but a full relation of principal and broker giving rise to general fiduciary obligations. Those
> include that (1) Patsos lacked sophistication and experience as a securities investor; (2) a
> reasonable inference can be drawn that Accomando had significant investment experience and
> specialized knowledge about private securities transactions; (3) Accomando was aware of
> Patsos's inexperience as an investor, and encouraged Patsos to rely on his investment expertise by
> promising financial benefits, favorable margin treatment, and private stock sales; (4) Accomando
> was in "complete control" of the Patsos accounts; (5) Accomando told Patsos that he was
> conducting transactions solely for his benefit; (6) Accomando selected and executed transactions
> in the accounts without the prior knowledge of or authorization from Patsos; (7) Accomando and
> First Albany did not provide Patsos written confirmation of stock transactions worth $ 1.75

Plaintiff purports to distinguish Lefkoitz, Cannistraci, and McIntyre, by stating that those cases all dealt with "simple" broker-customer relationships. Plaintiff contends that her complaint establishes the existence of a full principal and agent relationship. (Opp'n p. 16.) The complaint, however, is devoid of *any* facts to suggest that her relationship with the defendants was anything other than a simple stockbroker-customer relationship.

The degree of discretion exercised by the stockbroker is a key consideration in determining whether a relationship between a customer and her stockbroker is merely a simple stockbroker-customer relationship or rises to the level of a fiduciary relationship. See Patsos, 741 N.E.2d at 848-49. Plaintiff has alleged *no* facts to suggest that Defendants exercised *any* discretion over her investments. Plaintiff has not alleged that Defendants selected the transactions to be made in her account without obtaining the prior approval from Plaintiff, nor that Defendants somehow usurped control over her investments. See id. at 850 n.16. Rather, she has merely alleged that Defendants made *recommendations* with respect to her investments and that she followed those recommendations. (Compl. ¶ 11) ("...McGettrick contacted Ms. Pearce with his *recommendations* for investments for her retirement funds. McGettrick *recommended* that she split her SEP IRA funds between two managed accounts....") (emphasis added). As a matter of law, Plaintiff's allegations are insufficient to state a claim for breach of fiduciary duty. Count III should be dismissed.

---

million in March or April, 1989; and (8) when questioned, Accomando assured Patsos that he need not worry about his inability to understand the monthly statements or the terms of the customer agreement.

Id. at 852. Conversely, Plaintiff here has merely alleged that she is inexperienced and that she transferred funds to her experienced broker to invest on her behalf. Like the plaintiffs in Lefkoitz, Cannistraci, and McIntyre, she has alleged nothing more than a simple stockbroker-customer relationship.

V.    THE ALLEGATION THAT MR. DUCHESNEAU WAS A
      PRINCIPAL AND PRESIDENT OF THE DUCHESNEAU GROUP IS
      INSUFFICIENT TO ESTABLISH LIABILITY AGAINST HIM PERSONALLY

Mr. Duchesneau is not liable for Mr. McGettrick's actions simply because he was a principal and the president of the Duchesneau Group. To hold Mr. Duchesneau personally liable, Plaintiff must allege facts to suggest that Mr. Duchesneau somehow was involved in the alleged fraudulent misrepresentations. See Buck v. Clauson's Inn at Coonamessett, Inc., 349 Mass. 612, 614-615, 211 N.E.2d 349 (1965) (golf course president not liable for spectator's injury; not involved in maintenance of course); Burnham v. Beverly Airways, Inc., 311 Mass. 628, 637, 42 N.E.2d 575 (1942) (president and treasurer of corporation operating airport not individually liable for plane crash; not involved in flight operations); Tibbetts v. Wentworth, 248 Mass. 468, 472-473, 143 N.E. 349 (1924) (chief operating officer not liable for faulty elevator repair; no connection with property other than as agent). Plaintiff has made no such allegations. Furthermore, there are no allegations to suggest that there was a special relationship between Mr. Duchesneau and Plaintiff that would give rise to a fiduciary duty. Absent a legal duty, there can be no personal liability. See Lyon v. Morphew, 424 Mass. 828, 833, 678 N.E.2d 1306 (1997). Count VIII should be dismissed as to Mr. Duchesneau.

## CONCLUSION

For the reasons discussed above, Count I (Breach of Contract), Count II (Breach of the Implied Covenant of Good Faith and Fair Dealing), Count III (Breach of Fiduciary Duty), Count V (Massachusetts Blue Sky Laws), Count VI (Fraud), and Count VII (Control Person Liability Under Massachusetts Securities Laws) should be dismissed as to all Defendants, and Count VIII (Respondeat Superior) should be dismissed as to Mr. Duchesneau.

Alternatively, Defendants respectfully request that the Court order Plaintiff to set forth a more definite statement of her contract-based claims, identifying the contract or contracts at issue, when the breach occurred, what the breach consisted of, and how or in what manner the breach occurred, as well as of her fraud-based claims, detailing when, where, and how the alleged misrepresentations were made and why the alleged misrepresentations were false when made.

Respectfully submitted,

Pete S. Michaels
psm@michaelsward.com
Derek C. Anderson
dca@michaelsward.com
Debbie G. Evans
dge@michaelsward.com
MICHAELS & WARD, LLP
One Liberty Square
Boston, Massachusetts  02109
(617) 350-4040

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2005, a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of Motion to Dismiss or in the alternative for a More Definite Statement was delivered by hand to the following counsel of record for Plaintiff: Matthew J. Tuttle, Esq., Perkins, Smith & Cohen, LLP, One Beacon Street, 30th Floor, Boston, MA 02108.

Derek C. Anderson