# United States District Court
# District of Massachusetts

DESIREE PEARCE,
        Plaintiff,

      v.                       CIVIL ACTION NO. 04-11409-NG

THE DUCHESNEAU GROUP, INC.,
DAVID MICHAEL DUCHESNEAU,
BRANT P. MCGETTRICK,
        Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT (#5)*

COLLINGS, U.S.M.J.

### *I. Introduction*

This matter is before the Court on the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  The plaintiff, Desiree Pearce

("Pearce"), originally filed this action in state court on March 9, 2004. The defendants, the Duchesneau Group, Inc. (the "Company"), David Michael Duchesneau ("Duchesneau"), and Brant P. McGettrick ("McGettrick") (collectively referred to hereinafter as "defendants"), removed this case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 and federal diversity jurisdiction. Pearce alleges, among other things, that the defendants failed to advise her properly in investing her retirement savings, and failed to advise her of the details of her investment transaction. She asserts in her complaint (#1) the following causes of action: Count I, Breach of Contract; Count II, Breach of the Covenant of Good Faith and Fair Dealing; Count III, Breach of Fiduciary Duty; Count IV, Violation of Chapter 93A of the Massachusetts General Laws; Count V, Violation of Massachusetts Securities Laws; Count VI, Fraud; Count VII, Control Person Liability Under Massachusetts Securities Laws; and Count VIII, Respondeat Superior.

On July 23, 2004, the defendants filed their Motion to Dismiss and, in the Alternative, Motion for a More Definite Statement (#5) along with a Memorandum of Law in support of that motion (#6). The defendants move to dismiss all counts except Count IV, which alleges violations of Mass.Gen. L. c. 93A. In response, Pearce filed her Opposition to Defendants' Motion to Dismiss,

or in the Alternative, Motion for a More Definite Statement (#10). The defendants have filed a Reply Memorandum of Law (#21) and Pearce has filed a Sur-Reply Memorandum of Law (#17). The motion has thus been fully briefed, and is now ripe for disposition.

## II. The Facts

The facts are those as alleged by the plaintiff in her complaint (#1). Pearce is a resident of Florida. (#1 ¶ 1). Duchesneau was the principal and the president of the Company, which was, at all relevant times, located in Weston, Massachusetts. (#1 ¶¶ 2-3). McGettrick was, at all relevant times, an unregistered investment advisor employed by the Company. (#1 ¶ 4).

In or about February 2000, Pearce was referred to the Company as possible investment advisors to manage her retirement funds. (#1 ¶ 5). Pearce spoke with McGettrick at the Company and informed him that she had limited investment experience and wanted her funds to be invested conservatively. (#1 ¶¶ 6-7). Pearce explained to McGettrick that she needed an investor who would regularly monitor her account and McGettrick assured her that he would monitor her account and would choose investments in accordance with her conservative objectives. (#1 ¶¶ 9-10). McGettrick represented himself to be "a knowledgeable and experienced investment advisor" capable of providing

3

professional expertise and advice.  (#1 ¶ 6). McGettrick recommended that Pearce split her SEP IRA funds into two managed accounts: Insight Capital Management's ("Insight Capital") Non-Diversified Aggressive Growth Portfolio and TCW Asset Management's ("TCW") Small Cap Growth Fund. (#1 ¶ 11). McGittrick assured Pearce that these were conservative investments and that he would monitor the investments to ensure against losses.  Relying on that statement, Plaintiff transferred her SEP IRA funds to the defendants with a balance of $321,580.77. (#1 ¶ 13).

Unbeknownst to Pearce, the Company was not a licensed broker/dealer and therefore could not purchase or sell securities on her behalf. (#1 ¶ 14). Instead, the Company sent Pearce several forms  to sign in order to open a Salomon Smith Barney ("SSB") brokerage account. (#1 ¶ 15). The Company did not disclose to Pearce certain details about her investment account, to wit: that both funds had wrap fees that included management fees and transaction costs (#1 ¶ 16); that she would pay commissions and fees to the funds themselves in addition to those due to SSB, McGettrick and the Company (#1 ¶ 17); and that independent managers of the funds made all the decisions concerning her investments, without any regard for Pearce's conservative objectives. (#1 ¶ 18). She also avers that McGittrick failed to disclose that he

4

had been certified as a financial planner for only one month at the time he first spoke to Pearce. (#1 ¶ 23).

Pearce further alleges that, along with the defendants' failure to disclose the intricacies of her investment account, both the TCW and Insight Capital funds were not conservative investments because they were comprised of technology companies and other companies with small capitalization levels. (#1 ¶ 19). According to the complaint, "[t]hese volatile and concentrated investments exposed Ms. Pearce to unnecessarily high levels of risk, significantly higher than she informed McGettrick she was willing to accept." (#1 ¶ 21).

Pearce alleges that the defendants failed to monitor the funds regularly as promised and that when Pearce asked the defendants about a decline in her account they "actively encouraged" her to keep her money in the two funds. (#1 ¶¶ 22, 24). In or about June 2001, Pearce contacted Duchesneau about a further decline in her account and he informed her that McGettrick was no longer with the Company. (#1 ¶ 26). Duchesneau reaffirmed that McGittrick's initial recommendations were appropriate given Pearce's conservative objectives. (#1 ¶ 27). On November 20, 2001, Pearce closed her account; she had, however, "lost the vast majority of her retirement funds." (#1 ¶ 30).

### III. Discussion

<u>A. Relevant Standards</u>

#### 1. Motion to Dismiss Standard

"[C]ourts faced with the task of adjudicating motions to dismiss under 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2). Under that rule, a complaint need only include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Educadores Puertorriquenos en Accion et al. v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004). "This statement must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Thus, "[g]reat specificity is ordinarily not required to survive a 12(b)(6) motion." *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (internal quotations and citations omitted.) "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514,122 S. Ct. 992, 998 (2002) (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984)).

#### 2. Standard for Motion for a More Definite Statement

The Federal Rules of Civil Procedure permit a party to move for a more definite statement pursuant to Fed. R. Civ. P. Rule 12(e) when a complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ." Fed. R. Civ. P. 12(e).  "Courts do not invoke Rule 12(e) frequently and more often dismiss such complaints with leave to amend." *Fease v. Town of Shrewsbury*, 188 F. Supp.2d 16, 17 (D. Mass. 2002) (citation omitted). Generally, 12(e) motions are not favored because the Federal Rules of Civil Procedure permit notice pleading and ample pretrial discovery procedures, *see Haghkerdar v. Husson College,* 226 F.R.D. 12, 13-14 (D. Me. 2005) (and cases cited), and parties ought not employ the motion as a substitute for discovery. *See* Fed. R. Civ. P. 12(e), Advisory Committee Notes to 1946 Amendment.  Thus, a court properly grants a Rule 12(e) motion "only when a party is unable to determine the issues he must meet." *Haghkerdar*, 226 F.R.D. at 14 (internal quotations and citation omitted.)

B. Analysis of Arguments

1. *Breach of Contract Claim*

The defendants argue that dismissal is warranted on the breach of contract claim because the plaintiff has not identified the contract that forms the basis of her claim, and has not specified whether the contract was written

or oral.  In addition, the defendants argue that the plaintiff has not sufficiently

pled "consideration" supporting the contract.

"A breach of contract complaint must allege (1) the existence of a valid

and binding contract; (2) that plaintiff has complied with the contract and

performed his own obligations under it; and (3) breach of the contract causing

damages." *Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 34 (1st Cir. 2003)

(*citing* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

§ 1235, at 268-70 (2d ed.2002)).  The plaintiff has alleged the following:

> By offering financial and advisory services for a fee to
> Ms. Pearce, by agreeing and representing to provide
> such services to Ms. Pearce, by accepting and
> maintaining Ms. Pearce's retirement assets and
> accounts, and by having Ms. Pearce process investment
> transactions through the Company based on the
> defendants' advice and expertise, the defendants
> entered into a contract with Ms. Pearce to provide her
> with competent services and advice on a continuous
> basis, to gather and document sufficient relevant
> information in order to properly advise Ms. Pearce, to
> serve the best interests of Ms. Pearce as a client and
> investor, to follow Ms. Pearce's instructions, and to
> ensure the legal and appropriate handling and
> supervision of Ms. Pearce's assets and accounts and
> transactions therein.

Complaint #1 ¶ 32.

These allegations are sufficient to allege the existence of a contract and

Pearce's compliance with her own obligations under it. The complaint also alleges that the plaintiff transferred her funds to the Company (#1 ¶ 13); that McGettrick failed, among other things, to monitor the plaintiff's account as promised (#1 ¶¶ 24-25); and that, as a result, the plaintiff lost the majority of her retirement funds. (#1 ¶ 30). The Court concludes that these allegations are sufficient to put the defendants on notice of the nature of the claim. Further, although under First Circuit law the plaintiff is not required to plead consideration, the Court can fairly infer that the contract is supported by consideration.

The defendants have also moved the Court, pursuant to Fed. R. Civ. P. 12(e), to require the plaintiff to state whether the contract at issue was written or oral. The defendants complain that they are unable to assert defenses such as statute of frauds without knowing whether the contract is oral or written, and that it is unfair to permit the plaintiff to "imply" (#21 at 1) that the contract is oral "leaving Defendants open to a later claim that it is written." (#21 at 1-2). The Court disagrees that the plaintiff is required to state with particularity whether the contract was written or oral. "Th[e] simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious

9

claims." *Swierkiewicz,* 534 U.S. at 512, 122 S. Ct. at 998 (citations omitted.)

Further, "'[t]he provisions for discovery are so flexible and the provisions for

pretrial procedure and summary judgment so effective, that attempted surprise

in federal practice is aborted very easily . . . .'" *Id.* at 512-513, 122 S.Ct. at 998

(*quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1202, p. 76

(2d ed. 1990)).  The question of whether the contract was written or oral is a

proper matter for discovery.  *See* C. Wright & A. Miller, 5 Federal Practice and

Procedure: Civil 3d § 1235, p. 395 (3d ed. 2004) (noting that "[i]t has been

held that the complaint in a contract action should show whether the contract

is written or oral or both or be subject to a motion to dismiss or for a more

definite statement, but the few decisions to this effect are not in accord with the

spirit of federal pleading policy and it should be sufficient merely to allege that

a contract exists.")

    In complaining that they are unable to plead proper defenses, the

defendants again misunderstand the simplicity of the federal pleading

standards: Fed. R. Civ. P. 8(b) requires only that "[a] party shall state in short

and plain terms the party's defenses to each claim asserted . . . ."  Further, Fed.

R. Civ. P. 8(e)(2) states that, subject to the obligations of Rule 11, "[a] party

may . . . state as many separate claims or defenses as the party has regardless

10

of consistency and whether based on legal, equitable, or maritime grounds."
The Court therefore cannot conclude that, under Fed. R. Civ. P. 12(e), the
complaint in this instance "is so vague or ambiguous that [the defendants]
cannot reasonably be required to frame a responsive pleading . . . ." Fed. R. Civ.
P. 12(e).

For all these reasons, the Court will recommend that defendants' motion
to dismiss the breach of contract claim be denied. The Court will further
recommend that the defendants' motion for a more definite statement be
denied.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Under Massachusetts law, every contract contains an implied covenant of
good faith and fair dealing. *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287,
301 (1ˢᵗ Cir. 2004) (*citing Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass.
451, 583 N.E.2d 806, 820 (1991)). The defendants move to dismiss Count II,
Breach of the Covenant of Good Faith and Fair Dealing, arguing simply that no
contract existed and that therefore they are not bound by an implied covenant.
Because the Court has determined that the plaintiff has sufficiently pled the
existence of a contract, the Court will recommend that the defendants' motion
to dismiss Count II be denied.

### 3. Breach of Fiduciary Duty

The defendants move to dismiss the plaintiff's claim for breach of fiduciary duty, arguing that the plaintiff has failed to allege facts that establish that the plaintiff's relationship with the defendants was fiduciary in nature. They point, in particular, to a number of federal cases within this circuit granting motions to dismiss breach of fiduciary claims between a customer and stockbroker, and holding that no such fiduciary relationship exists under Massachusetts law. *See, e.g., Lefkowitz v. Smith Barney, Harris Upham & Co.,* 804 F.2d 154, 155 (1st Cir. 1986); *Shamsi v. Dean Witter Reynolds, Inc.,* 743 F. Supp. 87, 92 (D. Mass. 1989). The leading Massachusetts case on the question of whether a fiduciary duty has arisen between a stockbroker and his or her client, however, is *Patsos v. First Albany Corp.,* 433 Mass. 323, 741 N.E.2d 841 (2001).[1] In *Patsos,* the Massachusetts Supreme Judicial Court recognized that the relationship between a stockbroker and a customer may be either a fiduciary one or an ordinary business one, and enumerated a number of factual considerations that can determine whether a fiduciary duty has arisen between

---

[1]

The Court is mindful that the factual circumstances presented in the federal cases cited are often indistinguishable from the ones presented here, and notes that the *Patsos* Court acknowledged this line of cases. *See Patsos,* 433 Mass. at 330-331, 741 N.E.2d at 848 (collecting cases). It is an open question whether the outcome in those cases would have been different under the considerations laid out in *Patsos.*

a stockbroker and a customer. As a preliminary matter, the Supreme Judicial Court noted that "the scope of a stockbroker's fiduciary duties in a particular case is a factual issue that turns on the manner in which investment decisions have been reached and transactions executed for the account." *Id.* at 433 Mass. 332, 741 N.E.2d at 849 (citations omitted.) Under *Patsos*, the "degree of discretion a customer entrusts to his broker," *id.* at 333, 741 N.E.2d at 849, is a principal consideration:

> Where the account is 'non-discretionary,' meaning that the customer makes the investment decisions and the stockbroker merely receives and executes a customer's orders, the relationship generally does not give rise to general fiduciary duties. . . . Conversely, where the account is 'discretionary,' meaning that the customer entrusts the broker to select and execute most if not all of the transactions without necessarily obtaining prior approval for each transaction, the broker assumes broad fiduciary obligations that extend beyond individual transactions.

*Patsos* at 333-334, 741 N.E.2d at 849-850 (citations omitted).

In analyzing the extent to which a customer has entrusted "discretion" to his or her stockbroker, *Patsos* notes that trading without the customer's prior approval suggests an account is discretionary while frequent communications between the customer and the stockbroker about the "prudence" of certain investments suggests that the customer has retained control of the account. *Id.*

13

at 334, 741 N.E.2d at 850.   Further, *Patsos* instructs that a fact finder may consider as evidence of a discretionary account whether "a broker has acted as an investment advisor, and particularly if the customer has almost invariably followed the broker's advice . . . ." *Id.*   Beyond the question of discretion or control, *Patsos* notes that a "customer's lack of investment acumen may be an important consideration, where other factors are present" especially when "the broker holds himself out as an expert in a field in which the customer is unsophisticated." *Patsos* at 334-335, 850-851.

The defendants argue that the plaintiff has failed to state a claim for breach of fiduciary duty under the factors set out in *Patsos* because the plaintiff has alleged no facts that establish that the defendants had discretion over Pearce's account.  (#21 at 11).  The defendants maintain that the face of the complaint itself establishes that the defendants sought the plaintiff's prior approval before investing her funds and that the defendants merely recommended investments that the plaintiff followed. (#21 at 11). The Court rejects this argument, particularly at this stage of the proceedings.   Under *Patsos*, whether a stockbroker obtained prior approval is a consideration.  But, as noted, *Patsos* also instructs that when the "broker has acted as an investment advisor, and particularly if the customer has almost invariably followed the

14

broker's advice, the fact finder may consider this as evidence that the relationship is discretionary." *Id.* at 433, 741 N.E.2d at 850. The plaintiff here has alleged that McGettrick held himself out to Pearce as a "knowledgeable and experienced investment advisor." (#1 ¶ 6). And although the plaintiff here followed McGettrick's recommendations, nothing in her complaint suggests that McGettrick merely executed the plaintiff's buy and sell orders.[2] To the contrary, the plaintiff has alleged that she gave clear instructions to McGettrick that she was transferring her retirement assets to the defendants to ensure that they were professionally managed, and nothing in the complaint suggests that the plaintiff exercised any independent judgment on the investment decisions. *Cf. Birch v. Arnold & Sears*, 288 Mass. 125, 192 N.E. 591 (1934), cited in *Patsos*, 433 Mass. at 331, 741 N.E.2d at 848; *In re Murphy*, 297 B.R. 332, 350 (Bankr. D. Mass. 2003)(nondiscretionary account found to exist where customer telephoned several times a day to "keep abreast of daily market performance

---

[2]

Patsos sought to strike a balance between "the need to protect customers who relinquish control of their brokerage accounts, and the need to ensure that securities brokers–particularly those who merely execute purchase and sell orders for customers–not become insurers of their customers' investments." *Id.* at 336, 741 N.E.2d at 851. Rather, *Patsos* assigns "general fiduciary duties only to those stockbrokers who have the ability to, and in fact do, make most if not all of the investment decisions for their customers . . . ." *Id.*

and to discuss trading strategies . . . .")[3]

Finally, although the degree of discretion a stockbroker exercises is a key consideration in determining whether a fiduciary relationship existed, the degree of control or discretion that Pearce has accorded to McGettrick is itself a factual one, and, for that reason, resolution of this issue, and application of the other *Patsos* factors, requires further factual development. *See e.g.*, *Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co.*, 2001 WL 1249303, *4 (Mass. Super. 2001) (applying *Patsos,* and denying summary judgment on question of whether fiduciary relationship existed); *Wilson Farm, Inc. v. Berkshire Life Ins. Co.*, 2002 WL 31440151, *8 (Mass. Super. 2002) (stating that "[w]hether or not a fiduciary relationship existed is a factual question to be decided by a jury.")(*citing Patsos*, 433 Mass. at 329, 741 N.E.2d 841). *See also McAdams,* 391 F.3d at 302 (*citing Patsos*, 433 Mass. 323, 741 N.E.2d 841, 849-51 (2001)). Whether the plaintiff's claim survives further factual scrutiny

---

[3]

The defendants point also to the following language in *Patsos* to argue that the plaintiff has failed to state a claim here: "If [the plaintiff] had merely alleged 'in very general terms' that he trusted [the defendant,] that [the defendant] was aware of his inexperience, and that he had transferred funds for [the defendant] to invest on his behalf, that would be insufficient . . . to establish . . . a general fiduciary relationship." *Patsos,* 433 Mass. at 336, 741 N.E.2d at 851. As set forth above, however, the plaintiff has alleged more than these very general assertions.

is another question.[4] On a motion to dismiss, the plaintiff is not obligated to prove that a fiduciary relationship existed.   Rather, she need only put the defendants on notice of her claim.  She has done so here. For these reasons, the Court will recommend that the motion to dismiss the claim of breach of fiduciary duty be denied.

### 4. Massachusetts Blue Sky Laws (Count V) and Fraud (Count VI)

The defendants move to dismiss the plaintiff's common law fraud claim (Count VI), arguing that it fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). The defendants also urge the Court to apply 9(b)'s standards to the plaintiff's claim under the Massachusetts Uniform Securities Act, Mass. Gen. L. c. 110A § 101, 410(a) ("Blue Sky Law"), arguing that, although fraud is not a required element of the statutory claim, the Count V "sounds in fraud." (#6 at 8 n.3). The Court considers these arguments in that order.

### a.  The Common Law Fraud Claim (Count VI)

Although the Court looks to state law to determine whether the elements

---

[4]

The Court notes that *Patsos* itself was decided on a motion for summary judgment, and the Supreme Judicial Court, in denying summary judgment, pointed to the facts "set out with precision", *Patsos*, 433 Mass. at 336, 741 N.E.2d at 851 (internal quotations and citation omitted), in an affidavit submitted in support of a motion for summary judgment.

of fraud have been pled, the procedure for pleading fraud in federal court is governed by the heightened particularity requirements of Fed R.Civ P. 9(b). *See e.g.*, *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985). Rule 9(b) states:

> **Fraud, Mistake, Condition of the Mind**. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

"This heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" *Rodi v. Southern New England School of Law*, 389 F.3d 5,15 (1st Cir. 2004) (*quoting Alternative System Concepts, Inc.*, 374 F.3d at 29 (other citations omitted). The First Circuit has noted that "the specificity requirement extends only to the particulars of the allegedly misleading statement itself." *Id.* (*citing Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms." *Id.* (citing Fed.R.Civ.P. 9(b)). *See also Hayduk*, 775 F.2d at 444 (stating that "Rule 9(b) requires 'specification of the time, place and content of an alleged false representation, but not the circumstances from which fraudulent intent could be inferred.'") (*quoting McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980))(other citation omitted).

"To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity[5] for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (*quoting Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002), and omitting citation and internal quotation marks). *See also Rodi*, 389 F.3d at 13 (*citing Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 575 N.E.2d 70, 74 (1991)); *Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp.2d 51, 65 (D. Mass. 2004).  Under Massachusetts law, it is "sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on

---

[5]

The First Circuit has noted that Massachusetts case law is unclear on what "knowledge of falsity" means and indeed whether "knowledge of falsity" is a required element of fraud under Massachusetts law. *See e.g., Cummings v. HPG, Intern., Inc.,* 244 F.3d 16, 22-23 (1st Cir. 2001) (noting "lack of clarity in Massachusetts law"); *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 768 n. 16 (1st Cir.1996) (discussing "knowledge of falsity" requirement).  For example, some Massachusetts cases require a plaintiff simply to show "a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70, 74 (1991) (and cases cited).  *Cf. also Linton v. New York Life Ins. and Annuity Corp.*, 2005 WL 478000, *2 (D. Mass. 2005). The Court need not probe this point too deeply because at this stage of the proceedings, Rule 9(b) permits states of mind to be averred generally.

the part of the defendants need not be shown." *Russell*, 437 Mass. at 458-459, 772 N.E.2d at 1066 (internal quotations and citations omitted).

The plaintiff has alleged that both McGittrick and Duchesneau made various material misstatements or omitted to state material facts, and the defendants have specific complaints about each of them.  The plaintiff alleges that "the defendants made untrue statements of material fact and omissions regarding, *inter alia,* their professional experience and abilities, their handling of Ms. Pearce's retirement assets and their management and oversight of her accounts, and their recommendations for appropriate investments."  (#1 ¶ 64).  The defendants' chief argument is that the plaintiff has failed to plead these allegedly fraudulent misrepresentations with the particularity required under Fed. R. Civ. P. 9(b).  The Court considers the sufficiency of the various allegations *seriatim*[6].

First, the plaintiff alleges that in or about February 2000, upon first contacting the company, McGittrick "held himself out to Ms. Pearce as a

---

[6]

The defendants also argue that the allegations fail to specify the time and place of each misrepresentation.  The plaintiff has alleged that the Company is located in Weston, Massachusetts, (#1 ¶ 2), and the Court can fairly infer that McGittrick and Duchesneau made any alleged misrepresentations there. The plaintiff also alleges that she first contacted McGittrick in February, 2000 (#1 ¶5), that she contacted Duchesneau in June 2001 (#1 ¶ 26), and that she closed her account at the Company on November 20, 2001.  This relative time frame is sufficient to put the defendants on notice of Rule 9(b)'s "when" and "where" requirements.

knowledgeable and experienced investment advisor who could provide professional expertise and recommendations to her with respect to investing her retirement funds." (#1 ¶ 6). She further avers that, despite these representations, "he actually had been certified as a financial planner for only about a month at the time he was first speaking with Ms. Pearce." (#1 ¶ 23) The defendants argue that the plaintiff has failed adequately to allege the content of McGittrick's misrepresentation, (#6 at 11), and has failed to allege "fraudulent intent" with requisite particularity. The Court agrees that, as pled, the plaintiff has failed to allege with particularity "the circumstances constituting fraud," Fed. R. Civ. P. 9(b), *i.e.*, circumstances that would permit the inference that McGittrick's representation about his experience was false. The plaintiff does not allege, for example, that McGittrick had specifically represented that he had been a certified financial planner for a period of years. Indeed, the plaintiff's own allegations state simply that the plaintiff "was seeking the assistance of an experienced investment advisor," (#1 ¶ 23), not that she required the services of an experienced certified financial planner. Nothing here suggests fraud, as, on the face of the complaint, McGittrick may indeed have been an experienced financial advisor. Because Rule 9(b) dictates that the plaintiff aver "the circumstances constituting fraud," the Court

21

determines that the defendants are entitled to know the specifics of McGittrick's representation.   To that extent, the Court will recommend granting the defendants' motion for a more definite statement.

On the other hand, the Court disagrees with the defendants' argument that the plaintiff has failed to establish "fraudulent intent" with particularity. As noted above, "intent to deceive" is not required to establish fraudulent misrepresentation under Massachusetts law.[7]   Even so, the First Circuit has recently reiterated that under Rule 9(b), intent may be generally averred. *Rodi*, 389 F.3d at 15.  The plaintiff has done so here. (#1 ¶¶ 65-66).

Second, the plaintiff alleges that McGittrick misrepresented that he and the Company would carefully manage her retirement assets to ensure against losses (#1 ¶ 10). The plaintiff further alleges that neither McGittrick nor anyone else contacted her "to discuss [her] losses, to reassess her investment positions, to recommend other, more suitable investments, or to reduce the

---

[7]
    The First Circuit has held that, in the securities context, a plaintiff, for purposes of a motion to dismiss, must allege circumstance from which a court can draw a "strong inference" of fraudulent intent. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999) (following passage of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, "[i]t is clear that scienter allegations now must be judged under the 'strong inference' standard at the motion to dismiss stage."). That standard is inapplicable here where the plaintiff alleges no federal securities claims, and where scienter, or intent to deceive, are not elements of a common law fraud claim. *See Educadores Puertorriquenos,* 367 F.3d at 66 (noting that the Supreme Court "has signaled its disapproval of *all* heightened pleading standards except those that emanate from congressional or Rule-based authority.") Although the plaintiff alleges an "intent to deceive," (#1 ¶ 66), Massachusetts law does not require such an allegation.

serious risk exposure . . . created in the accounts." (#1 ¶ 25). Under Massachusetts law, "[a] statement of a promissory or predictive nature is actionable [in fraud] if it can be shown that the maker never intended to carry out the promise or knew that the prediction was false when it was made." *Lawson*, 341 F. Supp.2d at 65 (and cases cited). *See also Starr v. Fordham*, 420 Mass. 178, 187, 648 N.E.2d 1261, 1267 (1995) ("Statements of present intention as to future conduct may be the basis for a fraud action, if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.")(internal quotations and citations omitted). The plaintiff has sufficiently pled circumstances from which the Court can infer the falsity of McGittrick's representation. And, because the plaintiff may aver "intent" generally here, the allegation based on this representation has been sufficiently pled.

Finally, the plaintiff alleges that McGittrick represented that he would choose "investments in accordance with her conservative objectives." (#1 ¶¶ 10, 12). She alleges that McGittrick recommended two funds that were inappropriate for her investment objectives: "both the TCW and the Insight Capital funds were risky and volatile by nature and were comprised mostly of stocks in technology companies and companies with small capitalization

23

levels". (#1 ¶ 19). "In addition to the time, place, and person requirements under Rule 9(b), when alleging unsuitability the plaintiff must also 'show that the *quality* of the stocks bought was inappropriate to his investment objectives.'" *See, e.g., Alton v. Prudential-Bache Securities, Inc*, 753 F. Supp. 39, 43 (D. Mass. 1990) (*quoting Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 5 (1st Cir. 1983)).) The plaintiff does not merely allege that the stocks declined in value, *cf. id.* at 43, but also explains why the quality of the investments that McGettrick recommended were not appropriate for her investment objectives, *viz.*, because they contained under-capitalized technology companies and were risky and volatile in nature. (#1 ¶ 19). The plaintiff has also alleged that she made her conservative investment objectives plain to McGittrick and that both McGittrick and Duchesneau represented that the investments were consistent with her conservative investment objectives. (#1 ¶ 12, ¶ 27). These allegations are sufficient to state a claim for fraud. *Cf. Shamsi v. Dean Witter Reynolds, Inc.*, 743 F. Supp. 87, 91 (D. Mass. 1989) (allowing unsuitability claim under state law fraud claim where plaintiff expressed wish to invest in conservative investments, defendants assured plaintiff that stocks were low risk, and plaintiff set forth basis for stock's unsuitability); *Cannistraci v. Dean Witter Reynolds, Inc.*, 796 F. Supp. 619,

623 (D. Mass. 1992); *Lawson*, 341 F. Supp.2d at 65 (noting that a "statement of opinion may . . . be actionable where the maker's knowledge of the subject matter is so superior that a reasonable recipient would understand the opinion as an assertion of fact.") (*citing Stolzoff v. Waste Systems Intern., Inc.,* 58 Mass. App. Ct. 747, 759, 792 N.E.2d 1031 (2003)).

Finally, the defendants complain that certain allegations, in which the plaintiff attributes representations to simply "the defendants," fail to comply with Rule 9(b)'s strictures. For example, the plaintiff alleges that "the defendants reaffirmed that her funds were properly invested in accordance with her investment objectives and risk tolerance." (#1¶ 24). The Court agrees that such allegations are insufficient to meet Rule 9(b)'s standards, *see e.g.*, *Rodi*, 389 F.3d at 15 (stating that representations attributed to unidentified speakers unactionable).

The Court, having determined that this count contains "a hybrid of allegations, some of which satisfy the strictures of 9(b) and some of which do not . . ." *Rodi*, 389 F.3d at 15, "may sustain the claim on the basis of those specific allegations that are properly pleaded." *Id.* (citations omitted.) For these reasons, the Court will recommend denying the defendants' motion to dismiss and will further recommend granting the defendants' motion for a

more definite statement to the extent discussed above.

b.  Massachusetts Blue Sky Laws

The Court next addresses the defendants' argument that the plaintiff has failed to state a claim under Massachusetts Blue Sky Law, Mass. Gen. L. c. 110A, §§ 101, 410(a).   The defendants' only argument is that Count V "sound[s] in fraud" (#6 at 8 n. 3) and should therefore be held to the heightened particularity requirement of Rule 9(b).  Under this reasoning, the statutory claim would suffer from substantially the same infirmities as those set out above.

The plaintiff has alleged that the defendants' actions violated Mass. Gen. L. c. 110A §§ 101 and 410, (#1 ¶ 61), and has quoted § 101 in her complaint. (#1 ¶ 57). The problem for the plaintiff is that there is no private right of action under Mass. Gen. L. c. 110A, § 101.  *Fenoglio v. Augat, Inc.,* 50 F. Supp.2d 46, 58 (D. Mass. 1999) (and cases cited), *aff'd*, 254 F.3d 368 (1st Cir. 2001).  Only § 410(a) provides a private right of action. *Id.* (and cases cited). The Court, then, can certainly understand the defendants' confusion when, under Count V, the plaintiff alleges violations of § 101, which makes unlawful "any device, scheme or artifice to defraud" in the sale of securities or "any act practice, or course of business which operates or would operate as a fraud or

26

deceit upon any person." Further, the plaintiff has alleged: "The defendants' actions and conduct set forth herein constitute material fraudulent mispresentations and omissions that were relied upon to her detriment." (#1 ¶ 60). There is no question that Count V "sounds in fraud."

Under § 410, however, it is enough for the plaintiff to establish that "(1) the defendant 'offers or sells a security'; (2) in Massachusetts; (3) by making 'any untrue statement of a material fact' or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or 'in the exercise of reasonable care [would] have known,' of the untruth or omission." *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 52, 809 N.E.2d 1017, 1026 (2004). Thus, it is not that the plaintiff has insufficiently pled her claim with particularity; it is that the plaintiff has made allegations of fraud in this count where none are required: under § 410(a)(2), the plaintiff does not need to prove negligence, scienter or reliance. *See Marram,* 442 Mass. at 53, 809 N.E.2d at 1026-1027.

Were it not for this error in pleading, it seems likely that the plaintiff would have stated a claim under § 410, particularly under the notice-pleading requirements of Rule 8(a). Under these circumstances, the Court will recommend granting the defendants' motion to dismiss Count V to the extent

that the plaintiff seeks to state a claim under § 101. The Court will further recommend denying the defendants' motion to dismiss Count V to the extent that it is premised on § 410(a).   *See* Fed. R. Civ. P. 8(e)(2) (stating that "[w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements."). *See also 2 Moore's Federal Practice*, § 9.03[1][d] (Matthew Bender 3d ed.) (stating that "when averments of fraud are made in a claim in which fraud is not an element, an inadequate averment does not mean that no claim has been stated.  The court should disregard the averments that do not comply with Rule 9 and examine the remaining allegations to determine whether they state a claim.").  *Accord Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

### 5. *Respondeat Superior*

The defendants claim that the plaintiff has insufficiently averred that Duchesneau should be held individually liable under the theory of respondeat superior. (#6 at 14). "'Broadly speaking, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of

employment.'" *Kavanagh v. Trustees of Boston University,* 440 Mass. 195, 198, 795 N.E.2d 1170, 1174 (2003) (*quoting Dias v. Brigham Med. Assocs., Inc.,* 438 Mass. 317, 319-20, 780 N.E.2d 447 (2002)) (other citation omitted). The plaintiff alleges that Duchesneau was the principal and the president of the Company, (#1 ¶ 3), and that "[a]t all relevant times, McGettrick was acting within the scope of his employment as an employee for the Company." (#1 ¶ 75). Further, the plaintiff has alleged that "[a]s a result of this relationship and McGettrick's conduct and action during this relationship, the Company and Duchesneau are jointly and severally liable for McGettrick's wrongful actions and conduct set forth herein pursuant to the doctrine of *respondeat superior.*" (#1 ¶ 76). These allegations are sufficient at this stage of the proceedings to give the defendants notice of the claim. The Court therefore will recommend denying the defendants' motion to dismiss and motion for a more definite statement.

### IV. Conclusion

For all the reasons stated above, I RECOMMEND that the Defendants' Motion to Dismiss and, in the Alternative, for a More Definite Statement (#5) be ALLOWED to the extent that the defendants be ORDERED to file and serve a more definite statement as to Count VI (Fraud) regarding "the circumstances

constituting [the alleged] fraud" claimed against McGittrick (*see* pp. 21-22, *supra)* and as to the identity of the defendants who are alleged to have made misrepresentations (*see* pp. 26, *supra*).   I FURTHER RECOMMEND that said motion (#5) be ALLOWED to the extent that Count V seeks to state a claim premised on Mass.Gen. L. c. 110A § 101.   I FURTHER RECOMMEND that in all other respects, Defendants' Motion to Dismiss and, in the Alternative, for a More Definite Statement (#5) be DENIED.

## VI.  *Review by the District Judge*

The parties are hereby advised that pursuant to Rule 72, any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v.*

30

*Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

September 8, 2005.