# PERKINS, SMITH & COHEN, LLP

*Attorneys At Law*

HARRY S. MILLER

harry_miller@pscboston.com

ONE BEACON STREET
BOSTON, MA 02108-3106
TEL 617.854.4000  FAX 617.854.4040
www.pscboston.com

April 26, 2002

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Compliance Director
Salomon Smith Barney, Inc.
28 State Street, 26th Floor
Boston, MA 02109

Mr. Brant P. McGettrick
The Duchesneau Group, Inc.
13 Riverside Road
Riverside Office Park
Weston, MA 02493

Mr. Steven Hiorns
Salomon Smith Barney
28 State Street, 26th Floor
Boston, MA 02109

Mr. David Duchesneau
The Duchesneau Group, Inc.
13 Riverside Road
Riverside office Park
Weston, MA 02493

RE: **Customer: Desiree Pearce**
**Salomon Smith Barney Accounts: # 382-64198-18, # 382-64201-13**

Dear Sirs:

This letter is a formal demand upon Salomon Smith Barney, Inc., Stevens Hiorns, The Duchesneau Group, Inc., Brant McGettrick and David Duchesneau (collectively, the "Respondents" and individually, "SSB", "Hiorns", the "Duchesneau Group", McGettrick" and Duchesneau") on behalf of Desiree Pearce for relief pertaining to the claims set forth herein, specifically including such claims under the Massachusetts Unfair and Deceptive Trade Practices Act, Massachusetts General Laws, ch. 93A.

Ms. Pearce is a fifty three-year-old single woman, who is completely self-supporting. Prior to opening the account with the Respondents, she had very limited investment experience. The accounts at issue were her retirement accounts, upon which she was dependent for her retirement security. The Respondents took advantage of Ms. Pearce's trust and reliance, and took control of her accounts to serve the Respondents' interests rather than Ms. Pearce's interests, including through misrepresentation, failure to follow instructions, unsuitability, failure to diversify, over-concentration, negligence, and gross mismanagement, which resulted in devastating losses for Ms. Pearce.

Ms. Pearce was introduced by a friend to Brant McGettrick of the Duchesneau Group, Inc. in March 2000. Ms. Pearce's investment objectives, which she stated clearly to McGettrick, were to have her IRA professionally managed in a very conservative manner. Ms. Pearce

TEN WEYBOSSET STREET
PROVIDENCE, RI 02903-2818
TEL 401.456.1200  FAX 401.456.1210

1041 NEW YORK AVENUE, SUITE 810
WASHINGTON, DC 20004
TEL 202.789.8787  FAX 202.789.4242

Compliance Director, Salomon Smith Barney
Steven Hiorns
Brant P. McGettrick
David Duchesneau
April 23, 2002
Page 2

informed McGettrick that she was planning her retirement and that she had no pension available through work. Ms. Pearce told McGettrick that this was her only savings for retirement and that she could not afford to lose the money in this account. Ms. Pearce was also adamant that she needed someone to monitor the account daily because she had a hectic schedule as a real estate broker and would be unable to follow the account's progress. McGettrick assured Ms. Pearce that he would monitor the stocks daily and choose investments in accordance with her objectives. Based on these assurances, and McGettrick's promises of great returns on her investments, Ms. Pearce transferred her IRA to the Respondents in March 2000.

Ms. Pearce was deceived from day one. McGettrick, an unlicensed advisor, misrepresented his role in providing investment advice and account management to Ms. Pearce. Unbeknownst to Pearce, The Duchesneau Group is not registered with the National Association of Securities Dealers, Inc. ("NASD"). They are registered with the United States Securities and Exchange Commission and are licensed as a financial advisor in the Commonwealth of Massachusetts. As a financial consulting firm, the Duschesneau Group contracted with SSB to market SSB's services. This contract states that as a "network marketer", the Duchesneau Group is paid a consulting fee to place business with SSB. McGettrick was an employee of the Duchesneau Group, but he was not a registered broker with the NASD, nor was he registered with the Commonwealth of Massachusetts Securities Division in March 2000. But McGettrick did not disclose this to Ms. Pearce. McGettrick represented to Pearce that he was a money manager and that he would be the person in charge of monitoring Pearce's accounts and making stock recommendations. McGettrick made Pearce sign a contract, which stated that neither he nor the Duschesneau Group were acting as investment advisors to Pearce. This contract, which was contrary to McGettrick's oral representations to Pearce, was not properly explained to Pearce. McGettrick rushed Pearce through the forms and told her that they were routine forms to be completed in order to open a new account with the Duchesneau Group.

Ms. Pearce's initial account balance was $321,580.77. Ms. Pearce was immediately instructed by McGettrick to purchase two mutual funds. Pearce believed that McGettrick was purchasing two conservative mutual funds and that he would be monitoring these funds. Pearce did not understand that her accounts were being invested through SSB and were to be managed by two third party investment managers, Insight Capital Management and TCW Asset Management. Pearce was also not informed about the third party investment managers' commissions and fees. Both of these investment vehicles had wrap fees that included management fees and transaction costs.

SSB and their registered representative, Steven Hiorns, breached their fiduciary duty to Ms. Pearce by failing to determine Pearce's investment objectives despite the fact that Pearce was a SSB customer. After the SSB accounts were opened, Pearce was placed into TCW's small-cap growth portfolio and Insight Capital's non-diversified aggressive growth portfolio. Contrary to Ms. Pearce's objectives and needs, these portfolios were risky and volatile by nature and were comprised mostly of technology stocks and companies with small capitalization.

Compliance Director, Salomon Smith Barney
Steven Hiorns
Brant P. McGettrick
David Duchesneau
April 23, 2002
Page 3

Although the Duchesneau Group and SSB were profiting from Ms. Pearce's business, neither was providing proper investment advice or service to her. As a group, the Respondents managed the accounts in a manner that not only breached their fiduciary duty to Ms. Pearce, but was also in direct contradiction to her investment objectives. Ms. Pearce deferred to the Respondents' expertise to recommend all of the investments and monitor the accounts. Although these were not discretionary accounts, the Respondents had de facto control over Pearce's investments and were responsible for all investment decisions. Instead of choosing appropriate investments, they placed her in positions that were too risky for her goals. Ms. Pearce's accounts were over-concentrated in speculative securities that improperly subjected Ms. Pearce to increased levels of risk without the Respondents disclosing this risk to Ms. Pearce. The Respondent's overall investment strategy and practices were deceptive and unsuitable. The Respondents informed Ms. Pearce that the stocks chosen were conservative. If the Respondents had disclosed the true nature and risks associated with these securities to Ms. Pearce, she never would have approved the purchase of the securities.

Furthermore, the Respondents were negligent by failing to stop losses in the accounts. Ms. Pearce had given clear instructions to McGettrick that she wanted the accounts professionally managed and that she could not afford large losses. During the brief period that Ms. Pearce had the accounts, the Respondents never informed her about any losses in the accounts or suggested a plan to minimize her damages.

As soon as Ms. Pearce realized that the securities in her portfolio were inappropriate, she promptly objected and complained to the Respondents. Frustrated by the Respondents' unresponsiveness, and in an effort to mitigate her damages, Ms. Pearce closed and transferred the SSB accounts on 11/20/01. Unfortunately, the Respondents had already received their commissions and fees while Ms. Pearce lost the vast majority of her retirement fund.

Aggravating the wrongful conduct discussed above was the Respondents' failure to supervise their employees and oversee the activity in Ms. Pearce's accounts. SSB failed to enforce compliance with securities laws and regulations and failed to put effective procedures in place to regulate the conduct of its brokers. Properly implemented supervisory and compliance systems should have been alerted by the "red flags" present here, including the purchase of speculative securities for an IRA, and the failure to monitor excessive losses in the accounts. Most alarming is the fact that Ms. Pearce brought these problems to the Respondents' attention through a series of oral complaints that were not properly addressed by SSB or the Duchesneau Group company officials. SSB should have been on notice and increased supervision of Hiorns, who had previous complaints filed against him with the NASD. The Duchesneau Group should have monitored the actions and representations of McGettrick, who was not licensed with the NASD and not registered with the Commonwealth of Massachusetts Securities Division.

Unfortunately, proper supervision, which could have prevented the damages, was absent allowing the Respondents to do as they pleased at Ms. Pearce's expense. The Respondents thereby not only permitted, but actually facilitated the wrongdoing in this case, which involved repeated actions over an extended period of time made possible by the lax atmosphere in which

Compliance Director, Salomon Smith Barney
Steven Hiorns
Brant P. McGettrick
David Duchesneau
April 23, 2002
Page 4

these employees operated as agents of SSB and The Duchesneau Group. As a statutory control person, SSB is strictly liable for the actions of its registered representatives.

Through these unfair and deceptive practices, the Respondents reaped lucrative commissions from Ms. Pearce's accounts while the accounts plummeted. Ms. Pearce relied on the Respondents to follow her instructions, to fulfill their fiduciary duty, and to act in her best interests. Rather than providing Ms. Pearce with the type of investments and services she was seeking, the Respondents placed Pearce in extremely speculative and volatile securities. The exploitation and mismanagement of Ms. Pearce's accounts, the misrepresentations and failure to follow instructions, the over-concentration in unsuitable, high-risk securities and the negligent management of the accounts, caused Ms. Pearce to suffer approximately $234,931.61 in net out-of-pocket losses.

The wrongful and unlawful conduct discussed above constitutes violations of federal and state securities laws, breach of fiduciary duty, breach of contract, breach of a broker's duty of reasonable care, negligent and intentional misrepresentation, fraud and deceit, negligence and tortious malpractice of a licensed securities professional, failure to supervise, and violations of the Massachusetts Consumer Protection Act. Respondents' conduct also violated National Association of Securities Dealers, Inc. and New York Stock Exchange rules and regulations. In all, Respondents' wrongful actions and conduct caused Ms. Pearce to suffer out-of-pocket damages of $234,931.61 plus commissions, fees, attorneys' fees and expenses.

This letter is a demand for a reasonable settlement of Ms. Pearce's claims per Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A. Failure to respond to this letter within thirty days with a reasonable settlement offer may result in the commencement of legal action to recover the out-of-pocket loss and market adjusted damages, interest, attorney's fees and expenses, and punitive damages. We consider a reasonable offer of settlement to be the net out-of-pocket losses suffered by Ms. Pearce from the investments in her SSB accounts, amounting to $234,931.61.

Please contact me after you have had an opportunity to review this matter.

Sincerely,

Harry S. Miller

HSM/JAB/lmm

cc:    Desiree Pearce

28926-2-DemandLtr-lmm